538 A.2d 138

Glennon's Milk Service, Inc., Appellant *v.* West Chester Area Municipal Authority, Appellee.

Argued December 15, 1987 before President Judge CRUMLISH, JR. and Judges BARRY and COLINS, sitting as a panel of three.

*Melva L. Mueller,* with her, *Lawrence A. Goldberg, Goldberg, Evans, Herald & Donatoni,* for appellant.

*Randy L. Sebastian,* with him, *Frederick P. Kramer, II, MacElree, Harvey, Gallagher & Featherman, Ltd.,* for appellee.

OPINION BY JUDGE COLINS, February 26, 1988:

Glennon's Milk Service, Inc. (Glennon's), appeals an order of the Court of Common Pleas of Chester County which dismissed Glennon's complaint against the West Chester Area Municipal Authority (Authority) in its entirety with prejudice.

This action was originally brought by Glennon's as an action in equity to compel the Authority to repair a water leak in the service line between its main and Glennon's curb line. The Authority repaired the leak in December, 1984. The case was thereafter transferred to the law side of the trial court for a determination of whether the Authority was required to reimburse Glennon's for water damage to its property, sustained as a result of the leak.

The trial court recognized that Glennon's cause of action against the Authority was actually a challenge to the reasonableness of the Authority's rules and regulations passed in 1974. The trial court held that Glennon's failed to prove that the Authority's regulations, which placed the maintenance responsibility for service lines upon the customer, were unreasonable. Therefore, the trial court concluded that Glennon's had failed to prove any duty on the part of the Authority to repair the leak in question. Glennon's has brought the instant appeal following the trial court's denial of its post-trial motion.

In 1972, West Chester Borough Water Department, which had previously provided service to Glennon's, was taken over by the Authority. In 1974, the Authority adopted rules and regulations placing the burden of installing and maintaining the service lines upon the customer.[1]

---

[1] These rules and regulations were enacted pursuant to the rights and powers vested in the Authority by Section 4B(h) of the Municipality Authorities Act of 1945 (Act), Act of May 2, 1945, P.L. 382, *as amended,* 53 P.S. §306B(h).

Glennon's notified the Authority on July 1, 1982 of a leak in its service line and a dispute arose as to the responsibility for its repair. After repairing the leak in December, 1984, the Authority placed a lien on Glennon's property for the cost of the repair. Litigation in this matter was instituted shortly thereafter.

Our scope of review is limited to a determination of whether the Authority abused its discretion in promulgating its regulations which imposed the obligation of maintenance of service lines upon the customer. Glennon's contends that the delegation of the maintenance and repair obligation to the customer has rendered the service provided by the Authority unreasonable, in violation of Section 4B(h) of the Act.[2] The burden of proof is on the party challenging the reasonableness of the service to prove initially, that the Authority abused its discretion by implementing a service and secondly, that the service itself is unreasonable.[3]

Section 4B(h) of the Act provides, in pertinent part:
B. Every Authority is hereby granted, and shall have and may exercise all powers necessary or convenient for the carrying out of the aforesaid purposes, including but without limiting the generality of the foregoing, the following rights and powers:

---

[2] Section 4B(h) of the Act, 53 P.S. §306B(h), requires that an Authority provide reasonable rates and service. This Court's scope of review in determining the reasonableness of a municipal authority's rate structure has been limited to whether the authority committed an abuse of discretion. Therefore, we must conclude that in determining the reasonableness of service under Section 4B(h) of the Act, we are held to the same scope of appellate review.

[3] We here apply the same burden of proof as was utilized by this Court in determining the reasonableness of a municipal authority's rate structure under Section 4B(h) of the Act. *See Ridgway Township Municipal Authority v. Exotic Metals, Inc.,* 88 Pa. Commonwealth Ct. 637, 491 A.2d 311 (1985).

(h) To fix, alter, charge and collect rates and other charges in the area served by its facilities at reasonable and uniform rates to be determined exclusively by it, for the purpose of providing for the payment of the expenses of the Authority, the construction, improvement, repair, maintenance and operation of its facilities and properties, . . . and to determine by itself exclusively the services and improvements required to provide adequate, safe and reasonable service, . . . Any person questioning the reasonableness or uniformity of any rate fixed by any Authority or the adequacy, safety and reasonableness of the Authority's services, including extensions thereof, may bring suit against the Authority in the court of common pleas of the county wherein the project is located, or if the project is located in more than one county then in the court of common pleas of the county wherein the principal office of the project is located. The court of common pleas shall have exclusive jurisdiction to determine all such questions involving rates or service.

As noted previously, in 1974, by virtue of the rights and powers vested in the Authority by the Act, the Authority promulgated certain rules and regulations. Several of these regulations outlined the responsibilities of both the Authority and the customer with respect to maintenance of water service lines. Regulation 2.05A provides that all customers must keep their service pipes, on and off their property, in good working order at their own expense. Regulation 2.05B further provides that should there be a defect in the service line which the customer fails to correct, the expense which the Authority incurs to effect repairs to the service line will be borne by the customer. "Service line" is defined in Reg-

ulation 5.01 to include the piping and related appurtenances installed from the Authority's main to the building served. Regulation 5.07A provides that the customer is responsible for the piping and appurtenances from the water main to the building served. It further provides that the customer shall maintain, repair and renew the service and appurtenances, at its own expense. Finally, it provides that the customer shall maintain the service in such a manner that it does not leak or become a hazard to the public. Regulation 5.07B provides that should the Authority conclude that a condition exists in the service line which is creating a hazard and which has not been remedied by the customer, the Authority may repair the service line at the customer's expense.

In its brief to this Court, Glennon's contends that the Authority abused its discretion by failing to provide reasonable service to the customers, in that it refused to repair that part of its facilities line between the main and the curb line. Glennon's asserts that the Authority, under the Act, must repair its facilities and may not delegate responsibility for repair of the pipe in question to the customer. As support for this contention, Glennon's refers this Court to several decisions rendered at a time when water service disputes were subject to the jurisdiction of the Public Service Commission. We note that the Authority is not subject to the jurisdiction of the now defunct Public Service Commission, nor the Public Utility Commission. The express language contained in Section 4B(h) of the Act provides that the exclusive forum for resolution of disputes concerning rates or service instituted by an authority lies in the courts of common pleas. Therefore, we find the decisions cited by Glennon's to be unpersuasive in our analysis. We hold that the language of the Act bestows upon the Authority the discretion to determine the maintenance responsibilities with respect to service.

Furthermore, Glennon's contends that the Authority, as the successor of the West Chester Water Department, must assume all obligations of the former entity, including the obligation to repair lines up to the curb. We conclude, as did the trial court, that the Act vests the Authority with the discretion to exclusively determine what services it requires to provide adequate safe and reasonable service. The Authority, when it replaced the previous water service provider, initiated a rate system and began providing service to its customers in a manner that it found to be reasonable. The Authority had the discretion under the Act to do so. As long as it did not abuse that discretion and provide unreasonable service, the Authority's actions are without reproach.

In its Decision of August 28, 1986, prior to issuing its Order on post-trial motions, the trial court found the service initiated to be reasonable and noted that a division of maintenance and repair duties between the water provider and the water customer had long been the rule. The trial court considered the testimony of Mr. Neil Phillips, Manager of the Authority. He testified that the entire rate structure since the inception of the Authority in 1972 had been based on having the responsibility to repair the service line lie with the customer. He further testified that had the Authority been responsible for the repair of the more than 5,800 service lines connected to the main, there would have been a significant impact upon the rate structure of the Authority.

In its Order of February 9, 1987, the trial court distinguished between the repair responsibility of the customer under the 1955 Borough Ordinance and the 1974 rules and regulations of the Authority. It noted that under the 1955 Borough Ordinance, the customer was responsible for repair of only that portion of the line running from its building to the curb line, while the Authority was responsible for repair of the main itself and

the service line from the main to the curb line. The trial court further noted that under the rules and regulations promulgated by the Authority in 1974, the customer was responsible for the installation, maintenance and repair of the service line for the entire distance between its building and the Authority's main.

Because the leak occurred in June, 1982, subsequent to the adoption of the Authority's rules and regulations, the trial court applied the standard as set forth in those rules and regulations and found Glennon's to be responsible for the service line repair. Citing the explicit language of Section 4B(h) of the Act, the trial court concluded that Glennon's had not carried its burden of proving that the Authority had abused its discretion in implementing the rules and regulations. It went on to hold that Glennon's had not carried its burden of proving that the service provided under those rules and regulations was unreasonable.

We adopt the reasoning of the trial court and conclude that the language of the Act is controlling in this matter. Under Section 4B(h), the Authority clearly has the exclusive power to determine the services and improvements required to provide adequate, safe and reasonable service.. Absent a showing of an abuse of discretion by the Authority in promulgating the rules and regulations to effectuate that service, we may not abrogate the Authority's actions. Our review of the record indicates that Glennon's has not carried its burden of proof and, accordingly, we affirm the decision of the trial court.

## ORDER

AND NOW, this 26th day of February, 1988, the Order of the Court of Common Pleas of Chester County in the above-captioned matter is affirmed.