2005 SD 45

**David ELKJER and Cindi Elkjer, Plaintiffs and Appellants,**

v.

**CITY OF RAPID CITY, South Dakota, a municipal corporation, Defendant and Appellee.**

No. 23341.

Supreme Court of South Dakota.

Argued on Feb. 16, 2005.

Decided March 30, 2005.

Larry M. Von Wald of Beardsley, Jensen and Von Wald, Rapid City, South Dakota, Attorneys for plaintiffs and appellants.

Joel P. Landeen, Assistant City Attorney, Jason E. Green, City Attorney, City Attorney's Office, Rapid City, South Dakota, for defendant and appellee.

KONENKAMP, Justice.

[¶ 1.] Under a Rapid City ordinance, homeowners are responsible for damage to their property caused by service lines extending from the City's water main to the water stop on the homeowner's property. When the homeowners here sued the City to recover for damage caused by a broken service line, the circuit court granted the City's motion to dismiss for failure to state a claim upon which relief can be granted. On appeal, plaintiffs contend that the City's ordinance violates the open courts provision of the South Dakota Constitution as an unwarranted extension of sovereign immunity on the City's proprietary function of operating a waterworks system. Because we conclude that the Legislature has not granted to cities the power to disclaim all liability for water service lines, we reverse the dismissal and decline to reach the constitutional question.

## Background

[¶ 2.] Plaintiffs, David and Cindi Elkjer, are residents of the Parkridge area of Rapid City, South Dakota. Their home is connected to the City's waterworks system. On December 26, 2003, a service line failed, causing a large volume of water to escape. The broken line was underneath the city street between the main water line and the curb stop. When the line broke, water flooded plaintiffs' basement causing damage. This service line was constructed of polybutelene plastic, known as Poly–B.

[¶ 3.] The City did not install the service line or require that it be constructed of Poly–B. Service lines from the City's water main to the homes in the Parkridge area were installed by homebuilders and developers. However, builders were required to comply with City regulations on how to properly install these lines and on what materials were acceptable for use. One of the materials the City authorized was Poly–B. Many builders chose to use Poly–B to tap into the water main.

[¶ 4.] After becoming aware of nationwide problems with Poly–B, the City stopped approving its use for water service lines. In 1991, the City began a policy of repairing and replacing all defective Poly–B water service lines on a pro-rata basis. In 2001, the City amended its policy to "repair and replace all leaky polybutelene service lines from the main to the curb stop on a 100 percent basis." [1] From 1991

---

1. That policy statement provided:

It is currently, and shall remain the policy of the City of Rapid City to be responsible for, and repair or replace, only main water lines. The responsibility for the repair and replacement of all other water lines, including service lines from the main to the curb stop, shall remain on the respective homeowner who is served by that line. There shall be an exception to this policy for all neighborhoods which have water lines constructed of polybutelene plastic. Polybutelene pipes have, over the past decade, proven to be an inferior product, highly susceptible to imperfect laying techniques and prone to pull away from its end connections. Due to the nationwide failure of these pipes and the involvement of the City of Rapid City in deciding to use these pipes over a decade ago, the City of Rapid City shall implement a good will exception

to the established repair and replacement policy.

The City of Rapid City shall repair and replace all leaky polybutelene service lines from the main to the curb stop on a . . . 100 percent basis. Any polybutelene water line, which malfunctions, shall be replaced with a new copper water service line. At such time of repair, the City shall install a new copper line only to the curb stop. . . . Existing polybutelene water line, which runs from the residence to the curb stop, is not addressed under this good faith exception. The portion of existing polybutelene water line from the residence to the curb stop is the responsibility of the homeowner and shall be wholly an expense to that homeowner when and if replacement is required. . . .

This reimbursement shall include the costs of replacing all cement and roadwork

to 2003, the City replaced 370 Poly–B lines.[2] However, the City "assume[d] no liability for any other damage caused to real or personal property as a result of the breakage of any water line but only for the costs associated with [the] replacement of such line."

[¶ 5.] Plaintiffs brought suit against the City in 2004 to recover for the damage to their property. They alleged that the conduct of the City in operating and maintaining its waterworks was both a negligent and an intentional tort. The City responded with a motion to dismiss for failure to state a claim under SDCL 15–6–12(b)(5). The circuit court granted the motion. On appeal, plaintiffs ask "[w]hether City Ordinance 13.04.420 and City Policy PW 101001–12 violated the 'open courts' provision of the South Dakota Constitution, [Art. VI, § 20], by purporting to extend immunity to the City of Rapid City, while acting in the proprietary capacity of operating a waterworks system so as to foreclose a cause of action for negligent acts committed in that capacity."

### Analysis and Decision

■■■ [¶ 6.] A motion to dismiss under Rule 12(b)(5) tests the law of a plaintiff's claim. A court must deny the motion unless it appears beyond doubt that the plaintiff cannot recover under any facts provable in support of the claim. *Fenske Media Corp. v. Banta Corp.*, 2004 SD 23, ¶ 7, 676 N.W.2d 390, 392–93 (citations omitted). Although these "motions are viewed with disfavor and seldom prevail," on appeal, we will examine them de novo,

without deference to the trial judge's decision. *Id.* (citations omitted).

[¶ 7.] At the outset, we note that the City has not raised the defense of sovereign immunity. SDCL 21–32A–3 provides:

Except insofar as a public entity participates in a risk sharing pool or insurance is purchased pursuant to § 21–32A–1, any public entity is immune from liability for damages whether the function in which it is involved is governmental or proprietary. *The immunity recognized herein may be raised by way of affirmative defense.*

*Id.* (emphasis added). In that sovereign immunity is not directly in issue, before we reach a constitutional question, our first inquiry ought to be whether the City has been legislatively granted authority to disclaim all liability for damage caused by service pipes. The City's position is that it is acting under SDCL 9–47–1 and 9–47–6. SDCL 9–47–1 provides in relevant part: "Every municipality may construct, establish, operate, and maintain a system of waterworks and facilities in connection therewith; may regulate the distribution and use of water supplied thereby. . . ." SDCL 9–47–6 provides: "Every municipality shall have power to regulate and provide for the laying of water connections from the city water mains to the lot line, and to assess the cost against the abutting property owner as provided by this title."

[¶ 8.] Cities are empowered to "enact, make, amend, revise, or repeal" ordinances. SDCL 9–19–3. The City enacted Municipal Code Ordinance 13.04.420:

Public Works Committee Item number PW101001–12.

---

and any other costs which were a direct result of the water service line replacement. The City of Rapid City assumes no liability for any other damage caused to real or personal property as a result of the breakage of any water line but only for the costs associated with [the] replacement of such line. . . .

2. The City accepted no responsibility for repairing and replacing Poly–B lines from curb stops to residences. The issue of repairing and replacing these lines is not before us, and we give no opinion on the subject.

A. The water and sewer department *will not be responsible for service pipes and fixtures.* All service pipes and fixtures on the premises and up to the tap of the city main shall be installed and kept in good working order, and properly protected from frost and other danger, at the expense of the owner or person in possession of the premises served. If such owner or person shall fail to properly repair any leaky service pipe or other apparatus promptly upon receipt of due notice from the director of utilities, his assistants or any person authorized by him, the water may immediately be shut off from the premises and remain shut off until the necessary repairs have been made and a fee as established by the common council for turning the water off and on has been paid. The city shall not be liable for any damage resulting from the breaking of any of the service pipes or apparatus, or for any other damage that may result from shutting off water for repairing or for any other purpose, or for any variation in pressure. No reduction will be made from the regular water rates because of leaky fixtures.

B. If a service line develops a leak between the main and the curb box on any service pipe and is not immediately repaired, the director of utilities may cause such service pipe to be repaired and assess the actual cost of the repair, plus ten percent, to the property.

(Emphasis added).

■ [¶ 9.] In *Olesen v. Town of Hurley,* 2004 SD 136, ¶ 15, 691 N.W.2d 324, 328, we reaffirmed a longstanding rule in South Dakota: cities " 'possess only those powers conferred upon them by the Legislature . . . [and] a grant of authority includes those incidental or implied powers that are necessary to enable a municipality to perform the function authorized.' " *Id.*

(citations omitted). Because cities have "no inherent powers, and none of the attributes of sovereignty," the scope of their implied powers falls under "a reasonably strict standard." *Id.* (citations omitted). Whatever latitude these implied powers might include "will depend upon the circumstances of each case." *Id.*

■ [¶ 10.] We find nothing in SDCL 9–47–1 and 9–47–6 granting express authority to disclaim liability for service pipe damage occurring under city streets. The City asserts, however, that it possesses implied power to define where its water system responsibilities begin and end. No South Dakota case authority exists on this point, but the City refers us to several other jurisdictions where it claims similar city ordinances have been upheld as reasonably implied municipal powers.

[¶ 11.] *In Glennon's Milk Service, Inc. v. West Chester Area Municipal Authority,* 114 Pa.Cmwlth. 88, 538 A.2d 138 (1988), a business sued a city for damage to its property caused by a leak in the service line between the city water main and the curb line. Pennsylvania law granted authority to local water authorities to "exercise all powers necessary or convenient for the carrying out of [its] purposes," including, the authority for "the construction, improvement, repair, maintenance and operation of its facilities and properties, . . . and to determine by itself exclusively the services and improvements required to provide adequate, safe and reasonable service. . . ." *Id.* at 139–40. The court concluded that this enactment vested in the water authority "the discretion to exclusively determine what services it requires to provide adequate safe and reasonable service." *Id.* at 140. Given this "exclusive power," the water authority's division of maintenance and repair duties between the water provider and the customer was not an abuse of discretion and a dismissal of

the suit was upheld. Our waterworks statutes are not as broad as the ones in the *Glennon's* case.

[¶ 12.] In another decision the City mentions, a court confronted the question whether the cost of repair and replacement of a water service pipe extending from the main to the water stop was chargeable to the property owner. *Rosborough v. City of Moline*, 30 Ill.App.2d 167, 174 N.E.2d 16 (1961). Like the Pennsylvania statute examined in the *Glennon's* case, an Illinois law gave water providers "the power to make all needful rules and regulations concerning the use of water supplied ... and make such rules and regulations for the construction, completion, management, or control of the waterworks, and for the fixing and collecting of such water rates or rents as [they] may deem necessary or expedient." *Id.* at 21. Once again, South Dakota does not grant the broad statutory authority to municipal water authorities seen in this Illinois statute. But, it must also be noted, *Rosborough* only stands for the routine proposition that a rule requiring consumers to bear the burden of paying for the costs of making connections between their premises and the water main is reasonable. *Id.* at 22 (citing McQuillin, The Law of Municipal Corporations, Vol 12, 375–78 & Vol 13, 72 (3d ed)). South Dakota grants the same authority by statute. SDCL 9–47–6.

[¶ 13.] One other case the City cites is *Jackson v. Mayor, etc, of City of Ellendale*, 4 N.D. 478, 61 N.W. 1030 (1894). In this opinion, the North Dakota Supreme Court had no state waterworks provision to interpret. There was only a municipal ordinance requiring lot owners to pay for the cost of service pipe installation. On "general principles," consequently, the court ruled that the "water system established by the city, and which it must maintain, stops at the main. It does not embrace service pipes." *Id.* at 1030. That was the apparent understanding the Ellendale city planners had when they installed the water mains. But this dated opinion is of little assistance to us because here we must interpret South Dakota statutes governing the scope of municipal powers in their operation of waterworks.

[¶ 14.] Conceding that cities can lawfully assess the cost of service lines to abutting property owners, it does not necessarily follow that because homeowners may be responsible for installation and maintenance costs, that a city cannot be sued in tort for its own negligence related to those service pipes. On the contrary, with our "reasonably strict standard" for interpreting statutorily granted municipal powers, we see little room for the implied powers the City asserts here. Under SDCL 9–47–1, cities may "regulate the distribution and use of water," and, under SDCL 9–47–6, they "shall have the power to regulate and provide for the laying of water connections from the city water mains to the lot line...." Nothing in these statutes appears to allow cities a right to proclaim themselves "not responsible for service pipes and fixtures" extending from city water mains to water stops at lot lines. *See* Rapid City, SD, Municipal Code Ordinance 13.04.420(A). In fact, an opposite interpretation may well be taken from SDCL 9–47–6 because it requires that cities "*shall* have power to regulate and provide for the laying of water connections from the city water mains to the lot line" and "to assess the cost" to lot owners. *Id.* (emphasis added). Having power to "regulate and provide" obviously imports some level of responsibility.

[¶ 15.] In dealing with a similar controversy, an Ohio appeals court reasoned:

> [I]f the consumer is the owner and charged with the maintenance of the service pipe from the main to the house,

as claimed by the city, it appears from these rules that the owner could do nothing about repairing a leak or digging or excavating for it without first obtaining permission from the city, and certainly would have no right to excavate in the street without such permission. The erection and maintenance of a city waterworks is for the benefit of the citizens who use the water, but control over it is vested in the proper city authorities. The duties and obligations with respect to it are mutual between the consumer and the municipal authorities. If a consumer has reason to suspect an imperfection in the equipment affecting his property, which would in turn affect the entire system, it is his duty to notify the city, and then it becomes the duty of the city to use ordinary and reasonable care to make necessary corrections.

A city may be liable for damages resulting from leaks in service pipes of a municipal plant if, after notice, the city does not use reasonable care in correcting imperfections, even though such service pipes belong to the consumer, especially when, as in the case at bar, the consumer is not permitted to make any corrections without the permission of the city.

*Seeley v. City of Norwalk*, 53 Ohio App. 180, 4 N.E.2d 403, 404 (1936) (citations omitted).

■ [¶ 16.] Similar to the circumstances in the *Seeley* case, Rapid City homeowners are "responsible for the re-

pair and replacement of all other water lines" supplying water to their home, "including service lines from the main to the curb stop...." However, even though service line installation and replacement are the responsibility of homeowners, these service lines are regulated by the City. If homeowners need access to their water service lines under the street, permission to do so must be granted by the director of the public works as required by the municipal code.[3] From our reading of South Dakota's statutes governing municipal waterworks, we conclude that both the City and its homeowners share responsibility for service lines extending from the water main to the water stops.

■ [¶ 17.] Homeowners may be held responsible for the cost of installing, repairing, and replacing these service lines. On the other hand, to the extent that a city may be responsible for damage to service pipes, the Legislature has not authorized municipalities to disclaim liability from those who seek redress in tort. The City has the duty to use reasonable care to "regulate ... water connections from the city water mains to the lot line...." SDCL 9–47–6. Although the City is not an insurer of its waterworks system, it cannot disclaim all liability for damages resulting from defects in service lines when its negligence has been proved. Whether plaintiffs may prevail in court on their negligence claim remains to be decided. All we declare today is that they have

---

3. Rapid City, SD, Municipal Code 13.04.050 provides in part:

It is unlawful for any person to ... do any plumbing work in any or on any grounds for the purpose of connecting such pipes or plumbing, directly or indirectly, to the city water mains, or make any additions to or alterations of any water pipes, water closet, stopcock or other fixtures of apparatus for

the supply of any premises with water from the city water mains, without first obtaining a permit to do such work.

Under the City's Municipal Code 13.04.060, an application must also be completed in order for any owner of property to use the City's water; the application must then be approved by the director of public works.

the right to bring their suit. Accordingly, we reverse.

[¶ 18.]   Reversed and remanded.

[¶ 19.]   GILBERTSON, Chief Justice, and ZINTER and MEIERHENRY, Justices, and MILLER, Retired Justice, concur.

[¶ 20.]   MILLER, Retired Justice, sitting for SABERS, Justice, disqualified.