#23905, #23906, #24058-a-SLZ

**2007 SD 34**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA
* * * *
#23905

SHERRY B. NYGAARD, On
Behalf of Herself and All
Others Similarly Situated,                          Plaintiff and Appellant,

v.

SIOUX VALLEY HOSPITALS &
HEALTH SYSTEM,                          Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA
* * * *

HONORABLE GENE PAUL KEAN
Judge
* * * *

ARGUED ON MAY 23, 2006

* * * *
#23906

ROBERT DOSCH, On Behalf of
Himself and All Others Similarly
Situated,                          Plaintiff and Appellant,

v.

AVERA HEALTH,                          Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA
* * * *

HONORABLE GENE PAUL KEAN
Judge
* * * *

ARGUED ON MAY 23, 2006

* * * *
#24058

BRETT and DEBRA BURGHER,
On Behalf of Themselves and All
Others Similarly Situated,                                  Plaintiffs and Appellants,

     v.

RAPID CITY REGIONAL HOSPITAL,
INC.,                                                              Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JOHN J. DELANEY
Judge

* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 27, 2006

OPINION FILED **04/04/07**

ERIC J. MAGNUSON
STANLEY E. SIEGEL of
Rider, Bennett, LLP
Minneapolis, Minnesota

STEVEN S. SIEGEL of
Lynn, Jackson, Shultz & Lebrun
Sioux Falls, South Dakota

JAY C. SHULTZ of                          Attorneys for plaintiffs
Lynn, Jackson, Shultz & Lebrun            and appellants Nygaard,
Rapid City, South Dakota                  Dosch and Burgher.

ROBERTO A. LANGE of
Davenport, Evans, Hurwitz
 & Smith                                  Attorneys for defendant
Sioux Falls, South Dakota                 and appellee Sioux Valley.

THOMAS J. WELK
CHRISTOPHER W. MADSEN of
Boyce, Greenfield, Pashby & Welk          Attorneys for defendant
Sioux Falls, South Dakota                 and appellee Avera Health.

JEFFREY G. HURD
SARA L. LARSON of
Bangs, McCullen, Butler,
 Foye & Simmons
Rapid City, South Dakota

STUART M. ALTMAN of                       Attorneys for defendant
Hogan & Hartsen, LLP                      and appellee Rapid City
Denver, Colorado                          Regional Hospital.

#23905, #23906, #24058

ZINTER, Justice

[¶1.]        Sherry Nygaard, Robert Dosch, and Brett and Debra Burgher (Patients) commenced these class actions against Sioux Valley Hospitals and Health System, Avera Health, and Rapid City Regional Hospital, Inc. (Hospitals).[1]  The Patients were uninsured and not covered by Medicare/Medicaid.  They sought damages for being charged the full, undiscounted price of the Hospitals' services, which was more than the price paid by patients who were insured or covered by Medicare/Medicaid.  Patients also sought damages for alleged misrepresentations concerning the Hospitals' willingness to provide medical care regardless of ability to pay.  They brought their claims on four theories.  Three were premised on contract.  The fourth alleged a violation of SDCL 37-24-6, part of South Dakota's Deceptive Trade Practices and Consumer Protection Act (Trade Practices Act or the Act).  The circuit courts granted the Hospitals' motions to dismiss for failure to state a claim under SDCL 15-6-12(b)(5).[2]  Although each case has procedural issues not present

---

1.      Two of the actions were initially filed in federal court, but were voluntarily dismissed and re-filed in circuit court.  The third was removed to federal court, but later remanded to circuit court.

2.      South Dakota Rule 12(b)(5) is similar to Federal Rule of Civil Procedure 12(b)(6).  South Dakota's version provides in part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . .
>  (5) Failure to state a claim upon which relief can be granted. . . .

SDCL 15-6-12(b)(5).

in the others, the four substantive theories are the same. Because Patients'

complaints fail to state a claim under the substantive theories, we have

consolidated the cases and affirm.

**The Parties and Issues**

*Nygaard v. Sioux Valley*

[¶2.]        Because the cases were dismissed for failure to state a claim, we

restate the facts pleaded in the complaints. Sioux Valley is a non-profit corporation

with its principle place of business in Sioux Falls, South Dakota. Sioux Valley

described itself "as an integrated network of nearly 300 physicians and more than

150 healthcare facilities." Nygaard alleged that Sioux Valley held itself out: as

striving "to provide the highest value of health care services through a combination

of high quality and cost effective care"; as being "dedicated to providing quality care

for patients of all ages, regardless of race, creed, their circumstances, or their ability

to pay for such services"; as providing "care for the elderly and poor through the

Medicare and Medicaid programs at agreed upon rates, which are substantially

lower than the normally charged rates"; and as providing "charity care to patients

who have demonstrated an inability to pay for medical services." Nygaard also

alleged that Sioux Valley received state and federal tax exemptions, and as a

nonprofit charitable organization, was required to provide services regardless of

ability to pay.

[¶3.]        In May 2003, Nygaard underwent surgery at Sioux Valley's Vermillion

Campus Hospital. She also received other related treatment at Sioux Valley's

facilities. Upon admission, Nygaard alleged that she was required to sign a

standardized contract agreeing to pay, in full, unspecified and undiscounted charges for medical care. She also alleged that the charges were pre-set by Sioux Valley in its sole discretion. Nygaard was subsequently charged what she describes as the full, undiscounted price of the services provided. Although Nygaard made payments to Sioux Valley, a substantial balance remained, and Sioux Valley charged interest and fees relating to that balance. The complaint does not reflect the amount Nygaard was charged, the amount she paid, or the amount that remains owing.

## *Dosch v. Avera*

[¶4.]        Avera is also a non-profit corporation with its principal place of business in Sioux Falls. Avera held itself out as a health ministry of the Benedictine and Presentation Sisters "serving the people of eastern South Dakota and surrounding states with hospitals, nursing homes, clinics and other health services at more than 100 locations." Avera's "Health Mission" stated that it "provide[s] a quality, cost effective health ministry, which reflects Gospel values." Dosch alleged that Avera publicly stated that it was "guided by gospel values of . . . hospitality and stewardship" and "compassion. . . especially for the poor. . . ." Dosch also alleged that Avera received state and federal tax exemptions, and as a nonprofit charitable organization, was required to provide services regardless of ability to pay.

[¶5.]        In May 1993, Dosch was treated for a broken hip at Avera St. Luke's in Aberdeen, South Dakota. Upon admission, Dosch alleges that he was required to sign an agreement to pay the unspecified, undiscounted, pre-set charges described

by Nygaard. Dosch was billed in excess of $30,000. He set up a payment plan, paying $200 per month, but the payments were offset by interest and fees.

*Burghers v. Rapid City Regional Hospital*

[¶6.] Rapid City Regional Hospital (RCRH) is a non-profit charitable organization with its principle place of business in Rapid City, South Dakota. Burghers alleged that RCRH publicly represented itself: as "striving to continually exceed the expectations of every patient and customer in regard to service, effort and professional standards, demonstrating honest, positive and ethical behavior and communication in dealing with our patients, customers and employees"; as "providing quality services at the lowest possible cost"; and as "provid[ing] quality medical health care regardless of race, creed, sex, national origin, handicap, age, or ability to pay[.]" Burghers also alleged that RCRH received state and federal tax exemptions, and as a nonprofit charitable organization, was required to provide services regardless of ability to pay.

[¶7.] Brett and Debra Burgher, and their son, Nathan, all received medical care at RCRH. Before receiving treatment, they were also required to sign an agreement to pay the unspecified, undiscounted, pre-set charges described by Nygaard.

[¶8.] The following issues have been preserved[3] for review:

> 1) Whether the circuit court erred in dismissing Patients' contract theories involving: an implied, commercially

---

3. Additional theories were presented in the circuit courts, including: unjust enrichment and constructive trust.

reasonable price term; breach of the covenant of good faith and fair dealing; and enforcement of an adhesion contract.

2) Whether the circuit court erred in dismissing Patients' claims under the Trade Practices Act.

**Standard of Review**

[¶9.] "A motion to dismiss under SDCL 15-6-12(b) tests the legal sufficiency of the pleading, not the facts which support it. For purposes of the pleading, the court must treat as true all facts properly pled in the complaint and resolve all doubts in favor of the pleader." Guthmiller v. Deloitte & Touche, LLP, 2005 SD 77, ¶4, 699 NW2d 493, 496. "[T]hese 'motions are viewed with disfavor and seldom prevail.'" Elkjer v. City of Rapid City, 2005 SD 45, ¶6, 695 NW2d 235, 238 (quoting Fenske Media Corp. v. Banta Corp., 2004 SD 23, ¶7, 676 NW2d 390, 392-393 (citations omitted)). However, "facts 'well pled' and not mere conclusions may be accepted as true." Janklow v. Viking Press, 378 NW2d 875, 877 (SD 1985). A 12(b)(5) motion "does not admit conclusions of the pleader either of fact or law." Akron Savings Bank v. Charlson, 83 SD 251, 253, 158 NW2d 523, 524 (1968). Therefore, "[w]hile the court must accept allegations of fact as true when considering a motion to dismiss, the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." Wiles v. Capitol Indemnity Corp., 280 F3d 868, 870 (8thCir 2002). We review the circuit court's ruling de novo, with no deference to its determination. *Elkjer*, 2005 SD 45 at ¶6, 695 NW2d at 238.

## Decision

### 1) Contract Theories

[¶10.]     The circuit court that dismissed Nygaard's and Dosch's breach of contract theories viewed the essence of their claims as contentions that the Hospitals breached the contracts by not charging Patients the reduced rate that insured and Medicare/Medicaid patients received. The circuit court's view was based on the complaints' numerous references to being charged the "full, undiscounted cost" rather than the discounted rates Hospitals charged insured and Medicare/Medicaid patients. Therefore, when dismissing, the circuit court explained that recognizing such a claim would put the court in the role of a policy maker and "usurp the traditional role of the Legislature" in regulating hospitals. The circuit court in Burghers' case reached essentially the same conclusion.

[¶11.]     Patients, however, emphatically contend that none of their theories seek entitlement to the discounted rates charged to insured and Medicare/Medicaid patients. They contend that their references to discounted rates were merely pleaded as an illustration that the Hospitals' charges were unreasonable. Thus, on appeal, Patients "clarify" that they are not claiming entitlement to the discounted prices charged to others. Instead, they first contend that the Hospitals breached the contracts by charging more than an implied, commercially reasonable rate.[4]

---

4.     It is debatable whether Patients preserved this claim by raising it below. Almost all of the allegations in the complaints either directly or indirectly allege a failure to charge the discounted price others received. Patients did, however, argue at the circuit court hearing in Nygaard and Dosch as follows:

(continued . . .)

*(a) Implied Price Term*

[¶12.] Because there were no price terms itemized in the agreements, Patients pleaded that "[i]mputed in these contracts is the express and/or implied contractual obligation by [Hospitals] that [they] would charge Plaintiff[s] and the

_____

(. . . continued)

> Well, there is no question that there is different pricing, but the question that we're seeking to litigate, your Honor, is are the contracts with our clients, are they – are they commercially reasonable, are they fair, do they violate the South Dakota Fair Trade Practices Act, do they violate any of the contractual premises of the duty of good faith and fair dealing?

But Patients then continued:

> And if you look – I don't think you can look at any single one of those groups of contracts in the abstract. I think they can only be understood when they are compared one to the other. . . . [W]e anticipate that when we discover those contracts they are going to say here's a list of prices that we'll pay for this list of services. . . .

> And what we think we're going to see, and what they are conceding essentially, is that when we do see these contracts they are going to say the prices that the federal government pays are X, the prices that the insurance companies pay are two times X, and the prices charged – retail prices charge to the uninsured are three times X. . . .

> Based on this latter argument and the pleadings, we understand the circuit court's view of Patients' claim. We also observe that one need go no further than examining the Patients' proposed class to understand the circuit court's view. The proposed class included all uninsured patients who had paid (and persons or entities that had paid on behalf of such patients) "an amount for medical care in excess of the amount charged to Defendant[s'] Medicare, Medicaid, or other insured patients." We finally observe that Burghers failed to respond to RCRH's argument that Burghers did not present their clarified position to the circuit court in that case.

> Nevertheless, in the interests of judicial economy, we choose to address the "clarified" claim.

Class no more than the fair and reasonable charge for such medical care." However, we conclude that this theory fails to state a claim because the price terms were controlled by language in the contracts. The complaints all allege that the Hospitals required the Patients to sign contracts agreeing "to pay, in full, unspecified and undiscounted charges for medical care, which charges [were] *pre-set* by [the Hospitals]. . . ." (Emphasis added.) Because, as we explain below, pre-set price charges were pleaded, the price terms were fixed and determinable, and because the contracts spoke to the issue of price, the law does not permit imputation of different, implied price terms for what patients later claimed were the reasonable values of the services provided.

[¶13.] "[I]n order to ascertain the terms and conditions of a contract, we examine the contract as a whole and give words their 'plain and ordinary meaning.'" Canyon Lake Park, L.L.C., v. Loftus Dental, P.C., 2005 SD 82, ¶17, 700 NW2d 729, 734 (quoting Gloe v. Union Ins. Co., 2005 SD 30, ¶29, 694 NW2d 252, 260). Although the price of each hospital service was not listed in the contract itself, "[w]ords [that] fix an ascertainable fact or event, by which the term of a contract [ ] can be determined, make the contract definite and certain in that particular." Kuhfeld v. Kuhfeld, 292 NW2d 312, 315 (SD 1980). *See also* Restatement (Second) of Contracts § 33(2) (1981) (stating: "The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.").

[¶14.] Here, the word "pre-set" is the operative language of the contracts regarding price. The prefix "pre-" is defined as "[e]arlier; before; prior to." The

American Heritage College Dictionary, 1075 (3d 1997). "Set" is defined as "[t]o fix at a given amount." *Id.* at 1247. Therefore, under the ordinary meaning of the language "pre-set charges," the contract prices were fixed at a given amount prior to the execution of the contracts. And obviously, prices that are previously fixed at a given amount are determinable.

[¶15.] Therefore, according to the pleadings, the price terms were fixed and determinable from the language of the contracts. For that reason, the contracts were not silent or open concerning price and we cannot impute commercially reasonable or fair and reasonable price terms into the agreements. As most courts have noted in similar hospital pricing litigation, if the charges are ascertainable through reference to outside sources, there is no need to judicially impute a fair and reasonable price term. *See* Morrell v. Wellstar Health System, Inc., 280 GaApp 1, 5, 633 SE2d 68, 72 (2006) (noting: "The rules of contract construction enabled [the conclusion] that [the term] 'all charges' unambiguously referred to the written summary of specific charges required by [a statute.]"); Cox v. Athens Regional Medical Center, Inc., 279 GaApp 586, 587-592, 631 SE2d 792, 795-797 (2006) (concluding that agreeing to pay "in accordance with the rates and terms of the hospital" is not an open price term subject to an implication of reasonableness considering statutory requirement that hospitals provide written price summaries upon request); Shelton v. Duke Univ. Health System, Inc., 633 SE2d 113, 116-117

(NCApp 2006) (concluding that "regular rates and terms of the Hospital" is not an open price term when the prices are set forth in a chargemaster list).[5]

[¶16.]      We acknowledge that the pleadings do not reference the disclosure statutes or "chargemaster" lists[6] that were referenced in these decisions. However, the point of these cases is that if the contract price is fixed and determinable from sources outside the written agreement, the price term is not open in the sense that it allows a claim for some imputed, commercially reasonable price term. *See* Restatement (Second) of Contracts §204 cmt c (stating "where a term can be supplied by logical deduction from agreed terms and the circumstances, interpretation may be enough").

---

5.    The conclusion that hospital price terms are not open when pre-set prices can be ascertained through extrinsic sources is also well supported in trial court decisions. *See* Buckner v. Banner Health System, CV 2005-003052 (MaricopaCntySuperCtAriz, November 22, 2005) (concluding that when a contract states "usual and customary charges," there is no ambiguity in relation to statutory price posting requirements, and no implied terms may be asserted); Pitts v. Phoebe Putney Health System, Inc., Civ 04CV1991-3 (DoughertyCntySuperCtGa, June 23, 2005) (concluding that when prices are set out in a chargemaster, no implied terms are necessary), *aff'd,* Pitts v. Phoebe Putney Memorial Hosp., Inc., 279 GaApp 637, 631 SE2d 830 (2006); Elliot Hospital v. Boerner, 04-C-739 (HillsboroughSuperCtNDNH, July 15, 2005) (concluding that when "usual and customary" is stated and a chargemaster sets forth the charges, there are no implied contractual obligations); DiCarlo v. St. Mary's Hospital, 2006 WL 2038498, Civil Action No 05-1665 (DistNJ, July 19, 2006) (unpublished) (no contract or good faith and fair dealing claims were permitted because "all charges" is a definite price term when a chargemaster exists).

6.    Burghers do, however, point that out under 42 CFR 413.20(d)(2)(vi), hospitals that provide care to Medicare patients must have records of "[p]atient service charge schedules" available for review. Patients' pleadings allege that all three Hospitals provided care to Medicare patients.

[¶17.] That is precisely what occurred in this case. Patients pleaded that the price terms were pre-set. Therefore, the prices were fixed and determinable, and the pre-set price terms precluded imputation of different, implied terms.[7] The application of this rule is especially compelling in these cases: "in a hospital setting, it is not possible to know at the outset what the cost of the treatment will be, because it is not known what treatment will be medically necessary." *Cox*, 279 GaApp at 590-591, 631 SE2d at 797. The application of the rule is also compelling because Patients did not plead that they were charged something other than the pre-set charges, or that they requested but were denied access to the pre-set charges. Other courts have concluded that similar omissions support a dismissal for failure to state a claim. *See Shelton*, 633 SE2d 113 (affirming dismissal of breach of contract claim when contract's price term was "regular rates" of the hospital, reasoning that patient had not requested information on the regular rates and did not claim that the rates charged were not "regular"); Elliot Hospital v. Boerner, 04-C-739 (HillsboroughSuperCtNDNH July 15, 2005) (dismissing breach

---

7. Patients' own case of *Doe v. HCA Health Services of Tennessee, Inc.*, 46 SW3d 191 (Tenn 2001), demonstrates why Patients' pleadings fail to state a claim under the implied price term theory. In *HCA*, the contract only required the payment of "charges" for the hospitalization. *Id*. at 194. The Tennessee Supreme Court concluded that the term "charges" was not "sufficiently definite," and therefore, it allowed imputation of a fair and reasonable price term. *Id*. at 197. However, the Tennessee Court specifically noted that the contract in issue contained no "'reference to some document, transaction or other extrinsic facts. . . from which its meaning may be made clear.'" *Id*. (quoting 1 Richard A. Lord, *Williston on Contracts*, §4:27 at 593 (4th ed 1990)). Therefore, it appears the Tennessee Court would have found no open price term had that contract involved pre-set charges that were fixed and determinable.

of contract claim, reasoning that although the hospital contract required payment of the "usual and customary charges," "there [was] no indication that [the patient] requested an estimate or questioned what the [hospital's] usual and customary charges were prior to signing the agreement"). *See also* Satterfield v. Southern Regional Health System, Inc., 280 GaApp 584, 585-586, 623 SE2d 530, 531 (2006) (dismissing breach of contract claim in a state where a statute required availability of prices and patients had failed to "allege that the pricing information was unavailable").

### (b) Covenant of Good Faith and Fair Dealing

[¶18.]     Patients argue that the Hospitals breached the covenant of good faith and fair dealing by charging prices that did not relate to the cost of the services and were unreasonable and unexpected based on the Hospitals' representations. The circuit courts dismissed this theory reasoning that the breach of the duty of good faith and fair dealing did not give rise to a separate cause of action.

[¶19.]     In *Farm Credit Servs. of Am. v. Dougan*, 2005 SD 94, 704 NW2d 24, we considered when a cause of action arises for breach of the implied covenant of good faith and fair dealing. We held that "South Dakota does not recognize an independent [tort] for breach of the implied covenant of good faith and fair dealing." *Id.* at ¶6, 704 NW2d at 27 (citing Garrett v. BankWest, Inc., 459 NW2d 833, 842 (SD 1990); McKie v. Huntley, 2000 SD 160, ¶10, 620 NW2d 599, 602)). Consequently, to the extent Patients' complaints sought recovery for the independent tort of breach of the covenant of good faith and fair dealing, we affirm the circuit courts' dismissals.

[¶20.]    However, we must also consider the claim of breach of the implied covenant of good faith and fair dealing to the extent that it was a part of the parties' agreements. This Court has previously recognized that "'[e]very contract contains an implied covenant of good faith and fair dealing [that] prohibits either contracting party from preventing or injuring the other party's right to receive the agreed benefits of the contract.'" *Id.* at ¶8, 704 NW2d at 28 (quoting *Garrett*, 459 NW2d at 841). The concept of good faith and fair dealing is also recognized in the analogous provision of SDCL 57A-1-203 (UCC §1-203): "Every contract or duty within this title imposes an obligation of good faith in its performance or enforcement."

[¶21.]    This duty of good faith permits an aggrieved party to bring a breach of contract action when the other party:

> [B]y [its] lack of good faith, limited or completely prevented the aggrieved party from receiving the expected benefits of the bargain. A breach of contract claim is allowed even though the conduct failed to violate any of the express terms of the contract agreed to by the parties.

*Garrett,* 459 NW2d at 841 (citations omitted). The meaning of the covenant varies with the context of the contract. Ultimately, the duty "emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *Id.* (citing Restatement (Second) of Contracts §205, cmt a (1981)).

[¶22.]    However, the duty of good faith and fair dealing "is not a limitless duty or obligation." *Id.* "The implied obligation 'must arise from the language used or it must be indispensable to effectuate the intention of the parties.'" *Id.* (quoting Sessions, Inc. v. Morton, 491 F2d 854, 857 (9thCir 1974)). We also recognized a limitation when the language of a contract addresses the issue.

> The covenant of good faith does not create an amorphous companion contract with latent provisions to stand at odds with or in modification of the express language of the parties' agreement. It is not a repository of limitless duties and obligations.

*Farm Credit Services*, 2005 SD 94 at ¶9, 704 NW2d at 28 (citations omitted). Therefore, we explained that "[i]f the express language of a contract addresses an issue, then there is no need to construe intent or supply implied terms" under the implied covenant. *Id.* at ¶10 (citations omitted).

[¶23.] In the instant cases the express language of the contracts addressed the price issue. As previously explained, although the price of every hospital service was not itemized in the contracts, the pleadings allege that the charges were pre-set. And because these pre-set charges were fixed and determinable, these contracts addressed the issue of price and there is no basis to supply different price terms. A different implied price term would impermissibly stand at odds with and modify the pre-set price term. *Id.* at ¶9. Because we further observe that there is no allegation that Hospitals limited Patients' access to, or charged something other than, the pre-set charges referred to in the pleadings, Patients' breach of the contractual covenant of good faith and fair dealing theory failed to state a claim.

*(c) Enforcement of an Adhesion Contract*

[¶24.] Patients pleaded that the Hospitals did not provide an opportunity for negotiating the agreements and that there was greatly disparate and wholly unequal bargaining power. They further pleaded that such standardized contracts are contracts of adhesion that are unconscionable and contrary to public policy. *See generally* Citibank (S.D.), N.A. v. Hauff, 2003 SD 99, ¶20, 668 NW2d 528, 534-535

(describing construction of a contract of adhesion); Mobile Electronic Service, Inc., v. FirsTel, Inc., 2002 SD 87, ¶¶7-9, 649 NW2d 603, 605-606 (finding a contract unconscionable and unenforceable).

[¶25.]     In determining whether a contract is an unenforceable contract of adhesion, this Court looks not only at the bargaining power between the parties but also at the specific terms of the agreement. Scotland Vet Supply v. ABA Recovery Service, Inc., 1998 SD 103, ¶13, 583 NW2d 834, 837. Thus, we focus on both "overly harsh or one-sided terms," *i.e.*, substantive unconscionability; and how the contract was made (which includes whether there was a meaningful choice), *i.e.*, procedural unconscionability. Johnson v. John Deere Company, 306 NW2d 231, 237 (SD 1981) (citation omitted).

[¶26.]     Patients' complaints pleaded both procedural and substantive unconscionability. They allege that they were forced to sign the standardized agreements before they could receive medical care and that there was unequal bargaining power. Their complaints also allege that the contracts required them to pay pre-set charges that were determined at the sole discretion of the Hospitals.

[¶27.]     Patients sought two types of relief. They alleged that the Hospitals' use of an adhesion contract caused them economic injury and damages. They also alleged that the contracts were unenforceable.

[¶28.]     To the extent that Patients claimed entitlement to economic damages simply because they entered into a contract of adhesion, the complaints failed to state a claim upon which relief can be granted. Counsel acknowledged at oral

argument that the nature of an adhesion claim does not give rise to an independent cause of action for damages.[8]

[¶29.]     But even aside from this acknowledgement, and assuming that the contract was an unconscionable contract of adhesion, Patients have no right to recover damages simply because they *entered into* an unconscionable contract.  As the Eleventh Circuit Court of Appeals noted:

> [T]he equitable theory of unconscionability has never been
> utilized to allow for the affirmative recovery of money damages.
> The Court finds that neither the common law of Florida, nor
> that of any other state, empowers a court addressing allegations
> of unconscionability to do more than refuse *enforcement* of the
> unconscionable section or sections of the contract so as to avoid
> an unconscionable result.

Cowin Equip. Co., Inc., v. General Motors Corp., 734 F2d 1581, 1582 (11thCir 1984) (emphasis in original) (quoting Bennett v. Behring Corp., 466 FSupp 689, 700 (SDFla 1979)).  Other "cases [that] have addressed the issue have consistently rejected the theory that damages may be collected for an unconscionable contract provision, citing the language of [UCC] §2-302 and its common law precursor. . . ." *Id*.  "The doctrine of unconscionability is to be used as a shield, not a sword, and may not be used as a basis for affirmative recovery."  Super Glue Corp., v. Avis Rent a Car Sys., Inc., 132 AD2d 604, 606, 517 NYS2d 764 (NYAppDiv 1987).  "Under

---

8.     Q: you're essentially agreeing that the adhesion claim is part of the breach of
       contract.
       A: It is.
       Q: And, that the adhesion claim is essentially defensive in nature, in that, it
       only prevents the enforcement of unconscionable terms, it's not a sword by
       which there's some cause of action for. . . damages, necessarily
       A.  Right, for bad faith.
       A. What it does is it prevents them from enforcing the term of the contract
       that says they get to set the price. . . .

both the UCC and common law, a court is empowered to do no more than refuse enforcement of the unconscionable contract or clause." *Id*. (citations omitted). This Court has also noted that the doctrine is a defensive mechanism that enables parties to escape their obligations under contracts contravening public policy. Bartron v. Codington County, 68 SD 309, 323, 2 NW2d 337, 344 (1942) (quoting Baltimore and Ohio Southwestern Railway Co. v. Voigt, 176 US 498, 505, 20 SCt 385, 387, 44 LEd 560 (1900)). "'Adhesive clauses, exacted by the overreaching of a contracting party who is in an unfairly superior bargaining position, are always subject to the *defense* of unconscionableness. Public policy invalidates such clauses.'" 8 Samuel Williston and Richard A. Lord, *A Treatise on the Law of Contracts*, §18:5 at 28 (4th ed 1998) (emphasis added) (quoting Fluor Western, Inc. v. G & H Offshore Towing Co., 447 F2d 35 (5thCir 1971)).

[¶30.]     Patients have not, however, directed us to any case permitting an affirmative claim for damages simply because someone may have entered into a one-sided agreement. Therefore, we affirm the circuit courts' dismissal of Patients' affirmative adhesion contract claims that are being used as a sword to recover damages only because Patients entered into the contracts. We also affirm the dismissal of any defensive claims because in these cases there are no pleadings indicating that Hospitals are suing for enforcement of the contracts.[9]

---

9.     Burghers' and Dosch's bills were discharged in bankruptcy. Therefore, it appears that the defense is also moot in those cases.

*2) Trade Practices Act*

[¶31.]     The circuit courts dismissed this theory, noting that the complaints did not identify the specific section of the Act that was violated and the complaints did not sufficiently plead fraud.  Both courts also concluded that the claims under the Act were simply premised on differential pricing.

[¶32.]     Patients' complaints pleaded three types of alleged violations of the Trade Practices Act: (1) that the Hospitals falsely held themselves out to the public as providing cost-effective health care regardless of ability to pay;[10] (2) that Hospitals' discriminatory pricing policies violated the Act; and (3) that Patients believed that Hospitals would make good faith efforts to determine their ability to pay following treatment and Hospitals would not charge those who were unable to pay.[11]  We analyze these claims under SDCL 37-24-6, which provides in part:

> It is a deceptive act or practice for any person to:
>
> (1) Knowingly and intentionally act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been mislead, deceived, or damaged thereby. . . .[12]

---

10.     Dosch's pleadings did not make the identical factual allegations concerning the provision of care regardless of ability to pay that were made in the other complaints.  However, the complaints are sufficiently similar to make our analysis applicable to all.

11.     This claim was incorporated by reference from the Patients' pleadings on equitable tolling.

12.     SDCL 37-24-1(7) defines "merchandise" as "any object, wares, goods, commodity, intangible, instruction, or service[.]"  SDCL 37-24-1(8) defines "person" to include "a natural person or his legal representative, a partnership, a limited liability company (domestic or foreign), a corporation

(continued . . .)

[¶33.]     Patients correctly point out that SDCL 37-24-6(1) makes these violations actionable "regardless of whether any person has in fact been mislead, deceived, or damaged thereby. . . ." However, that statute is the criminal proscription. Patients' civil actions are governed by SDCL 37-24-31, which specifically requires a causal connection between the alleged violation and the damages suffered:

> Any person who claims to have been adversely affected by any act or a practice declared to be unlawful by §37-24-6 shall be permitted to bring a civil action for the recovery of actual damages suffered *as a result* of such act or practice.

(Emphasis added.)[13]  Therefore, to state a claim under SDCL 37-24-31, Patients must have pleaded that their economic damages were proximately caused by one or more of the three alleged violations of the Act.

*Provision of Care Regardless of Ability to Pay*

[¶34.]     Patients first alleged that Hospitals misrepresented their willingness to *provide care* regardless of ability to pay. Therefore, under the causation element of their civil remedy, Patients' complaint must have left sufficient room to prove the fact that they were denied health care because of their inability to pay. However, this causal proof is not possible under the pleadings. The complaints affirmatively allege that Patients actually received medical care despite their inability to pay.

---

(. . . continued)
    (domestic or foreign), a trust, an incorporated or unincorporated association, and any other legal entity[.]"

13.     Both intentional and negligent misrepresentation also require reliance. Ducheneaux v. Miller, 488 NW2d 902, 915 (SD 1992); Fisher v. Kahler, 2002 SD 30, ¶10, 641 NW2d 122, 126-127.

Therefore, according to the pleadings, the Hospitals' representations regarding the provision of care were not misrepresentations, and this type of allegation fails to state a claim under the Act.

*Discriminatory Pricing*

[¶35.] Patients' second claim alleges a failure to charge discounted pricing similar to that provided for insured and Medicare/Medicaid patients. Patients pleaded:

> As alleged above, Defendant's conduct in charging Plaintiff[s] and the Class the highest and full, undiscounted and uncompensated cost for medical care and its charging the Plaintiff[s] and the Class a higher amount that its insured patients for the same medical services, despite its charitable, non-profit, tax-exempt status, is in violation of the South Dakota Deceptive Trade Practices and Consumer Protection Act because it is unfair, discriminatory, unconscionable, unethical, immoral, and oppressive. Such conduct is against public policy and has caused substantial economic injury to Plaintiff[s] and the Class.

[¶36.] This claim fails to state a claim for two reasons. First, this pleading does not allege prohibited conduct under Act; *i.e.*, deceptive practices, fraud, false pretenses, false promises or misrepresentations to conceal, suppress, or omit[14] material facts. Instead, this pleading simply alleges unfairness, claiming that differential pricing by charitable institutions is "unfair, discriminatory,

---

14.     Patients also *argue* that Hospitals violated the Trade Practices Act by omitting the price terms (a material fact) from the standardized agreements. However, Patients did not fairly plead that the omission of a price term violated this Act. We acknowledge that the complaints repeatedly refer to "unspecified and undiscounted charges," or "undisclosed" charges. However, when fairly read, each of these references is fatally tied to either the non-actionable and abandoned claim for the discounted pricing or the non-actionable claim for an imputed price term. Therefore, this claim was correctly dismissed.

unconscionable, unethical, immoral, and oppressive." This type of allegation does not fall within the deceptive practices prohibited by the Act.

[¶37.] Second, even if we were to assume that this pleading could state a deceptive pricing claim under the Act, it is an attempt to claim that the Hospitals' charitable tax exempt status, under 26 USC §501(c)(3) and other state tax exemptions, imposes a duty to charge the discounted rates that insured and Medicare/Medicaid patients receive. However, this is the very claim that Patients now disavow. It is also a claim that has been rejected by virtually every court that has considered the issue.[15] Therefore, the circuit courts properly dismissed this type of allegation.

*Patients' Beliefs Concerning Post-Care Charges*

[¶38.] Patients finally allege that they "*believed* that Defendant[s] would make good faith efforts to determine a person's ability to pay following evaluation or treatment and would not bill or charge those . . . who were unable to pay. Thus [they] *believed* that free care or reduced cost care would be provided . . . based upon

---

15. *See* Darr v. Sutter Health, 2004 WL 2873068 (NDCal 2004) (unpublished); Ferguson v. Centura Health Corp., 358 FSupp2d 1014 (DColo 2004); Burton v. William Beaumont Hosp., 347 FSupp2d 486 (EDMich 2004); Gardner v. North Mississippi Health Servs., Inc., 2005 WL 1312753 (NDMiss 2005) (unpublished); Wright v. St. Dominic Health Servs., Inc., 2005 WL 743339 (SDMiss 2005) (unpublished); Quinn v. BJC Health Sys., 364 FSupp2d 1046 (EDMo 2005); Shriner v. ProMedica Health Sys., Inc., 2005 WL 139128 (NDOhio 2005)(unpublished); Lorens v. Catholic Health Care Partners, 356 FSupp2d 827 (NDOhio 2005); Amato v. UPMC, 371 FSupp2d 752 (WDPa 2005); Bobo v. Christus Health, 227 FRD 479 (EDTex 2005).

[their] ability to pay. . . ." (Emphasis added.) However, these conclusory statements of belief are not sufficient to survive a motion to dismiss.

[¶39.] To survive a motion to dismiss, a plaintiff "must allege causation with sufficient particularity such that we can determine whether the factual basis for its claim, if proven, could support an inference of proximate cause." First Nationwide Bank v. Gelt Funding Corp., 27 F3d 763, 770 (2dCir 1994). "'[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" 2 James Moore, *Moore's Federal Practice*, §12.34(1)(b) (3rd ed 2006) (quoting Campbell v. San Antonio 43 F3d 973, 975 (5thCir 1995)). "While facts must be accepted as alleged, this does not automatically extend to bald assertions, subjective characterizations, or legal conclusions. The plaintiff need not include evidentiary detail, but must allege a factual predicate concrete enough to warrant further proceedings." *Id*. (quoting DM Research v. College of American Pathologists, 170 F3d 53, 55-56 (1stCir 1999) (citations omitted)).

[¶40.] In this case, Patients have only pleaded subjective characterizations of belief and legal conclusions of proximate cause that are untethered to any factual predicate that could constitute causation. In fact, Patients' subjective beliefs are totally at odds with their pleadings. Patients did not plead that the Hospitals made any representations involving post-care determinations of ability to pay. Furthermore, Patients' alleged damages could not have arisen *as a result* of such beliefs because they did not plead that it was their beliefs that caused them to select these Hospitals in lieu of other healthcare providers. Rather than alleging

that they sought care at these facilities because they believed they would receive post-treatment reduction of charges, they specifically alleged that they entered into contracts that required them to pay the full, undiscounted prices that were pre-set by the Hospitals.  Therefore, Patients' subjective and conclusory allegations of belief and proximate cause failed to state a claim of causation.

[¶41.]    For all of the foregoing reasons, the circuit courts' dismissals are affirmed.  In light of this disposition of the substantive theories that are central to each case, we need not reach the parties' remaining issues and arguments.

[¶42.]    Affirmed.

[¶43.]    GILBERTSON, Chief Justice, and KONENKAMP, and MEIERHENRY, Justices, and MACY, Circuit Court Judge, concur.

[¶44.]    MACY, Circuit Court Judge, for SABERS, Justice, disqualified.