[913 NYS2d 254]

In the Matter of MARK FRANKEL, on Behalf of Himself and All Others Similarly Situated, Appellant, v CITICORP INSURANCE SERVICES, INC., et al., Respondents, et al., Defendants.

Second Department, November 30, 2010

### APPEARANCES OF COUNSEL

*Harry I. Katz, P.C.*, and *Shayne, Dachs, Corker, Sauer & Dachs, LLP*, Mineola (*Norman H. Dachs*, of counsel), for appellant.

*Stroock & Stroock & Lavan LLP*, New York City (*Julia B. Strickland* pro hac vice and *Joseph E. Strauss* of counsel), for respondents.

### OPINION OF THE COURT

HALL, J.

In 1987, the plaintiff Mark Frankel (hereinafter the plaintiff) opened a credit card account with the defendant Citibank (South Dakota) N.A. (hereinafter Citibank), subject to a written agreement which provided, among other things, that Citibank could unilaterally change any of the terms of the agreement at any time. About 14 years later, Citibank allegedly mailed the plaintiff a notice that it was changing the terms of the agreement by adding terms which provided that any dispute between the parties would be subject to mandatory, binding arbitration

on an individual (nonclass, nonrepresentative) basis. These new terms (hereinafter the arbitration change-in-terms) dictated that if the plaintiff did not agree to the new terms, his account would be closed.

The plaintiff enrolled in a "Voluntary Flight Insurance Program" which automatically billed him the sum of $13 for flight insurance whenever he purchased airplane tickets with his credit card. Thereafter, he was consistently billed for flight insurance whenever he made any type of travel-related transaction (e.g., cancelled trips, ticket upgrades, and travel agent fees). The plaintiff was erroneously billed in this manner on about 10 occasions, and the record indicates that Citibank continued to impose these erroneous charges despite having knowledge of their impropriety.

The plaintiff commenced this putative class action on behalf of himself and all others who have been erroneously charged for flight insurance. The plaintiff alleged that this pattern of erroneous billing was calculated to elicit small sums of money from a large number of consumers, amounting to significant aggregate revenue for the defendants.

Approximately two months after service of the summons and verified complaint, the defendants Citicorp Insurance Services, Inc. and Citibank (hereinafter together the respondents) moved to compel arbitration and stay the action pending arbitration on the ground that the plaintiff's claims were subject to arbitration under the arbitration change-in-terms. The plaintiff opposed the motion and cross-moved to permanently stay arbitration or, in effect, in the alternative, to temporarily stay arbitration pending a framed-issue hearing. The plaintiff contended, among other things, that (1) the respondents failed to demonstrate that they had given him notice of the arbitration change-in-terms; (2) the alleged agreement to arbitrate was unconscionable and exculpatory; (3) the South Dakota choice-of-law provision in the subject contract was unenforceable; and (4) the motion was premature as discovery was needed.

The Supreme Court determined that the respondents had demonstrated that the action was subject to a valid agreement to arbitrate and that there was no basis to order discovery. Accordingly, the Supreme Court granted the motion, denied the cross motion, and directed the parties to proceed to arbitration of the plaintiff's claims on an individual (non-class) basis (2008 NY Slip Op 32722[U] [2008]). The plaintiff appeals, contending, among other things, that the respondents failed to demonstrate

that he agreed to the arbitration change-in-terms, that the South Dakota choice-of-law provision is unenforceable, and that the arbitration change-in-terms are unconscionable. We modify.

Pursuant to CPLR article 75, "[a] party aggrieved by the failure of another to arbitrate may apply for an order compelling arbitration" (CPLR 7503 [a]). "If an issue claimed to be arbitrable is involved in an action pending in a court having jurisdiction to hear a motion to compel arbitration, the application shall be made by motion in that action" (*id.*).

"In order to compel a party to arbitrate pursuant to a contractual agreement there must be 'no substantial question [as to] whether a valid agreement was made or complied with' " (*Manos v Interbank of N.Y.*, 202 AD2d 403, 403 [1994], quoting CPLR 7503 [a]; *see Matter of Cassone*, 63 NY2d 756, 758 [1984]). "In the event such question is raised, it is for the court to adjudicate" (*Manos v Interbank of N.Y.*, 202 AD2d at 403; *see Matter of Schreiber v K-Sea Transp. Corp.*, 9 NY3d 331, 340 [2007]; *Matter of Eagle Ins. Co. v Lucia*, 33 AD3d 552, 555 [2006]; *O'Brien v Bache Halsey Stuart Shields*, 80 AD2d 846, 846 [1981]; *Rose v Merrill Lynch, Pierce, Fenner & Smith*, 57 AD2d 553, 553 [1977]). In some cases, it may be appropriate to afford discovery or require disclosure in order to resolve the questions raised (*see Matter of Brady v Williams Capital Group, L.P.*, 14 NY3d 459 [2010]; *Hayes v County Bank*, 286 AD2d 371, 371 [2001]; *Matter of Welton Becket Assoc. v LLJV Dev. Corp.*, 193 AD2d 478, 478 [1993]).

In this case, the respondents failed to demonstrate that the parties agreed to arbitrate because the evidence was insufficient to establish that the respondents "deliver[ed] or mail[ed]" the arbitration change-in-terms to the plaintiff (Personal Property Law § 413 [11] [e]). The affidavit of the senior vice-president of the respondents' servicing company was insufficient to demonstrate personal knowledge of actual mailing (*see Mid City Constr. Co., Inc. v Sirius Am. Ins. Co.*, 70 AD3d 789, 790 [2010]; *New York & Presbyt. Hosp. v Allstate Ins. Co.*, 29 AD3d 547, 547-548 [2006]). Moreover, her claims that Citibank "caused to be mailed" the arbitration change-in-terms and that Citibank's records "reflected" that the 2002 credit card agreement had been mailed to the plaintiff were conclusory and otherwise insufficient to establish "office practice . . . geared so as to ensure the likelihood that [the documents were] always properly addressed and mailed" (*Nassau Ins. Co. v Murray*, 46 NY2d 828, 830 [1978]; *see Lenchner v Chasin*, 57 AD3d

623, 624 [2008]; *Hospital for Joint Diseases v Nationwide Mut. Ins. Co.*, 284 AD2d 374, 375 [2001]; *Tracy v William Penn Life Ins. Co. of N.Y.*, 234 AD2d 745, 748 [1996]; *Matter of Merendino v Village of Pawling*, 152 AD2d 762, 763 [1989]; *Anzalone v State Farm Mut. Ins. Co.*, 92 AD2d 238, 240 [1983]; *cf. Schmiemann v State Farm Fire & Cas. Co.*, 13 AD3d 514, 515 [2004]; *Badio v Liberty Mut. Fire Ins. Co.*, 12 AD3d 229, 230 [2004]). Accordingly, there is a "substantial question" as to whether the parties ever made a valid arbitration agreement (CPLR 7503 [a]).

■ The respondents similarly failed to establish the existence of the alleged choice-of-law provision. Assuming, however, that the existence of a binding choice-of-law provision is established by sufficient proof of mailing (*see* Personal Property Law § 413 [11] [e]), New York choice-of-law principles must be used to determine whether and to what extent the South Dakota choice-of-law provision should be applied to this controversy (*see Welsbach Elec. Corp. v MasTec N. Am., Inc.*, 7 NY3d 624, 629 [2006]; *Tanges v Heidelberg N. Am.*, 93 NY2d 48, 54 [1999]; *Padula v Lilarn Props. Corp.*, 84 NY2d 519, 520 [1994]; *Matter of Istim, Inc. v Chemical Bank*, 78 NY2d 342, 346-347 [1991]; *Education Resources Inst., Inc. v Piazza*, 17 AD3d 513, 513-514 [2005]; *see also Klaxon Co. v Stentor Elec. Mfg. Co.*, 313 US 487, 496 [1941], *on remand* 125 F2d 820 [1942], *cert denied* 316 US 685 [1942]; *2004 Stuart Moldaw Trust v XE L.I.F.E., LLC*, 374 Fed Appx 78, 80 [2d Cir 2010]).

We note that New York courts will generally enforce a clear and unambiguous choice-of-law clause contained in an agreement so as to give effect to the parties' intent (*see Welsbach Elec. Corp. v MasTec N. Am., Inc.*, 7 NY3d at 629; *Millennium Falcon Corp. v WRD Sales, Inc.*, 46 AD3d 862, 863 [2007]; *see generally Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]; 19A NY Jur 2d, Conflict of Laws § 33).

However, "under common-law rules matters of procedure are governed by the law of the forum" (*Martin v Dierck Equip. Co.*, 43 NY2d 583, 588 [1978]; *see Tanges v Heidelberg N. Am.*, 93 NY2d at 53; *Kilberg v Northeast Airlines*, 9 NY2d 34, 41 [1961]; *Education Resources Inst., Inc. v Piazza*, 17 AD3d 513, 513 [2005]; *see also* Restatement [Second] of Conflict of Laws § 122). "On the other hand, matters of substantive law fall within the course charted by choice of law analysis" (*Tanges v Heidelberg N. Am.*, 93 NY2d at 53; *see Oltarsh v Aetna Ins. Co.*, 15 NY2d 111, 115 [1965]; *Millennium Falcon Corp. v WRD Sales, Inc.*, 46 AD3d at 863).

"New York courts therefore apply contractual choice of law clauses only to substantive issues" (*Education Resources Inst., Inc. v Piazza*, 17 AD3d at 513; *see Sears, Roebuck & Co. v Enco Assoc.*, 43 NY2d 389, 397 [1977]; *Melcher v Apollo Med. Fund Mgt. L.L.C.*, 25 AD3d 482, 483 [2006]). Significantly, "the law of the forum normally determines for itself whether a given question is one of substance or procedure" (*Tanges v Heidelberg N. Am.*, 93 NY2d at 54 [internal quotation marks and citation omitted]; *see Kilberg v Northeast Airlines*, 9 NY2d at 41; *Lauterbach v Fleischer*, 16 AD2d 701, 702 [1962]; *see also* Restatement [Second] of Conflict of Laws § 7).

Even when agreements direct the application of foreign substantive law, New York courts may decline to enforce choice-of-law provisions if the chosen law does not bear a reasonable relationship to the parties or the transaction (*see Welsbach Elec. Corp. v MasTec N. Am., Inc.*, 7 NY3d at 629; *Friedman v Roman*, 65 AD3d 1187, 1188 [2009]; Restatement [Second] of Conflict of Laws § 187 [2] [a]; 19A NY Jur 2d, Conflict of Laws § 34), or where the chosen law violates "some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal" (*Loucks v Standard Oil Co. of N.Y.*, 224 NY 99, 111 [1918]; *see Welsbach Elec. Corp. v MasTec N. Am., Inc.*, 7 NY3d 624, 629 [2006]; *Cooney v Osgood Mach.*, 81 NY2d 66, 78 [1993]; Restatement [Second] of Conflict of Laws § 187 [2] [b]; 19A NY Jur 2d, Conflict of Laws § 35).

Neither of these exceptions is applicable here. The record demonstrates that there is a reasonable relationship between the parties and the State of South Dakota (*see Welsbach Elec. Corp. v MasTec N. Am., Inc.*, 23 AD3d 639, 642 [2005], *revd on other grounds* 7 NY3d 624 [2006]; *see also Hageman v Home Depot U.S.A., Inc.*, 45 AD3d 732, 734 [2007]; *Finucane v Interior Constr. Corp.*, 264 AD2d 618, 620 [1999]), and the plaintiff failed to sustain his "heavy burden" of demonstrating that the laws of South Dakota are "truly obnoxious" to the laws of this state (*Cooney v Osgood Mach.*, 81 NY2d 66, 79 [1993] [internal quotation marks omitted]; *see Welsbach Elec. Corp. v MasTec N. Am., Inc.*, 7 NY3d at 627; *Finucane v Interior Constr. Corp.*, 264 AD2d 618, 621 [1999]).

Moreover, contrary to the plaintiff's contention, the type-size requirements of CPLR 4544 may not be invoked to bar admission of either the arbitration change-in-terms or the choice-of-law provision itself. Although CPLR 4544 is statutorily

cast as a procedural rule of evidence (*see* Restatement [Second] of Conflict of Laws § 138), we recognize that "[o]n occasion, a rule phrased in terms of evidence may in fact be a rule of substantive law" (Restatement [Second] of Conflict of Laws § 138, Comment *c*), and under such circumstances it "fall[s] within the course charted by choice of law analysis" (*Tanges v Heidelberg N. Am.*, 93 NY2d 48, 53 [1999]). In this regard, "[a]lthough [CPLR 4544] speaks in terms of the admissibility in evidence of such a contract, the underlying purpose of this 'consumer' legislation is to prevent draftsmen of small, illegibly printed clauses from enforcing them" (*Matter of Filippazzo v Garden State Brickface Co.*, 120 AD2d 663, 665 [1986]; *see Schiffman v Hann Auto Trust*, 56 AD3d 650, 651 [2008]; *Lonner v Simon Prop. Group, Inc.*, 57 AD3d 100, 107 [2008]). Accordingly, in the context of a choice-of-law analysis, the provisions of CPLR 4544 should be regarded as a substantive, formal, contractual requirement rather than a procedural rule of the forum (*see* Restatement [Second] of Conflict of Laws § 138, Comment *c*; *accord Lerner v Karageorgis Lines*, 66 NY2d 479, 485 [1985]; *Matter of Rederi [Dow Chem. Co.]*, 25 NY2d 576, 581 [1970], *cert denied* 398 US 939 [1970]; *see also* Restatement [Second] of Conflict of Laws § 187, Comment *b*; *but see Mickle v Christie's, Inc.*, 214 F Supp 2d 430, 432 [2002]). Since the alleged choice-of-law provision in this case provides for the application of South Dakota law, the substantive laws of that state must be applied and the substantive laws of New York, including for these purposes CPLR 4544, have no application. However, the size of the typeface in the arbitration change-in-terms may nevertheless be relevant to the issue of unconscionability as a matter of substantive South Dakota law.

Turning to the applicable substantive law under the alleged choice-of-law provision, we conclude that there is a substantial question as to whether the arbitration change-in-terms are unconscionable under South Dakota law.

> "[W]hile § 2 of the [Federal Arbitration Act] preempts state law which treats arbitration agreements differently from any other contracts, it also 'preserves general principles of state contract law as rules of decision on whether the parties have entered into an agreement to arbitrate'" (*Progressive Cas. Ins. Co. v C.A. Reaseguradora Nacional De Venezuela*, 991 F2d 42, 46 [1993], quoting *Cook Chocolate Co., a Div. of Worlds Finest Chocolate,*

*Inc. v Salomon, Inc.*, 684 F Supp 1177, 1182 [1988]; *see* 9 USC § 2; *Mitsubishi Motors Corp. v Soler Chrysler-Plymouth, Inc.*, 473 US 614, 626 [1985]; *Perry v Thomas*, 482 US 483, 492 n 9 [1987]; *Southland Corp. v Keating*, 465 US 1, 16 n 11 [1984]; *Prima Paint Corp. v Flood & Conklin Mfg. Co.*, 388 US 395, 404 n 12 [1967]).

The plaintiff contends that the arbitration change-in-terms are unconscionable because they were unilaterally imposed by Citibank, and because they explicitly preclude him from bringing or participating in a class action, which effectively deprives him of any forum given the small amount of damages he has personally sustained (*see Homa v American Express Co.*, 558 F3d 225, 233 [2009]; *Skirchak v Dynamics Research Corp.*, 508 F3d 49, 59 [2007]; *Dale v Comcast Corp.*, 498 F3d 1216, 1224 [2007]; *Shroyer v New Cingular Wireless Servs., Inc.*, 498 F3d 976, 984 [2007]; *Coneff v AT & T Corp.*, 620 F Supp 2d 1248, 1260 [2009]; *Caban v J.P. Morgan Chase & Co.*, 606 F Supp 2d 1361, 1372 [2009]; *Feeney v Dell Inc.*, 454 Mass 192, 207-208, 908 NE2d 753, 767 [2009]; *Woods v QC Fin. Servs., Inc.*, 280 SW3d 90, 100 [Mo 2008]; *Fiser v Dell Computer Corp.*, 144 NM 464, 188 P3d 1215 [2008]; *Scott v Cingular Wireless*, 160 Wash 2d 843, 857, 161 P3d 1000, 1008 [2007]; *Discover Bank v Superior Ct.*, 36 Cal 4th 148, 161, 113 P3d 1100, 1109 [2005]; *cf. Stolt-Nielson S.A. v Animal Feeds Intl. Corp.*, 559 US —, 130 S Ct 1758 [2010]; *Buckeye Check Cashing, Inc. v Cardegna*, 546 US 440, 444 [2006]). Although the parties disagree as to the likely cost required to proceed with arbitration, the record remains relatively undeveloped on this issue (*cf. Brower v Gateway 2000*, 246 AD2d 246, 255 [1998]; *Matter of Teleserve Sys. [MCI Telecom. Corp.]*, 230 AD2d 585, 593-594 [1997]).

The Supreme Court of South Dakota has stated that " '[u]nconscionability' is not susceptible of description" inasmuch as "[i]t is not a concept, but a determination to be made in light of a variety of factors not unifiable into a formula" (*Johnson v John Deere Co.*, 306 NW2d 231, 236 [SD 1981]). However, "[t]he South Dakota Supreme Court has distinguished between procedural unconscionability and substantive unconscionability" (*Braun v E.I. du Pont De Nemours & Co.*, 2006 WL 290552, *7, 2006 US Dist LEXIS 37431, *22 [2006]; *see Nygaard v Sioux Val. Hosps. & Health Sys.*, 731 NW2d 184, 194-195 [SD 2007]; *Johnson v John Deere Co.*, 306 NW2d 231, 237 [1981]).

Under South Dakota law, procedural unconscionability "deals with the process of making the contract, including a meaningful

choice" (*Johnson v John Deere Co.*, 306 NW2d at 237, citing Leff, *Unconscionability and The Code—The Emperor's New Clause,* 115 U Pa L Rev 485 [1967]; *see Nygaard v Sioux Val. Hosps. & Health Sys.*, 731 NW2d at 194-195; *accord Gillman v Chase Manhattan Bank*, 73 NY2d 1, 10 [1988]). Substantive unconscionability "deals with the overly harsh or one-sided terms" (*Johnson v John Deere Co.*, 306 NW2d 231, 237 [1981], citing Leff, *Unconscionability and The Code—The Emperor's New Clause,* 115 U Pa L Rev 485 [1967]; *see Nygaard v Sioux Val. Hosps. & Health Sys.*, 731 NW2d at 194-195; *accord Sablosky v Gordon Co.*, 73 NY2d 133, 138 [1989]).

For purposes of evaluating procedural unconscionability, the parties' "background, experience, and business acumen" are relevant considerations (*Johnson v John Deere Co.*, 306 NW2d at 238). In addition, "a great deal of emphasis" must be placed on any "disparity of bargaining power" (*Rozebooom v Northwestern Bell Tel. Co.*, 358 NW2d 241, 244 [SD 1984]). Moreover, "economic inequality" may be a factor which precludes the parties from "dealing at arms length" and which may result in unfair bargaining power (*id.* at 245).

The Supreme Court of South Dakota has also engaged in an analysis of whether the services or products for which the parties contracted are available from alternative sources (*see Mobile Elec. Serv., Inc. v FirsTel, Inc.*, 649 NW2d 603, 606 [SD 2002]; *Rozebooom v Northwestern Bell Tel. Co.*, 358 NW2d at 244). Such analysis bears on whether a party had a meaningful choice to accept or reject a particular agreement (*see Mobile Elec. Serv., Inc. v FirsTel, Inc.*, 649 NW2d at 606; *Rozebooom v Northwestern Bell Tel. Co.*, 358 NW2d at 244).

The Supreme Court of South Dakota has noted that "the bulk of successful cases . . . deal with the unprotected and unsuspecting consumers in the market for consumer goods, often the victims of sharp practices: the over-priced stereos, the unreasonably favorable security devices, the illiterate buyer, and the fine-printed clauses" (*Johnson v John Deere Co.*, 306 NW2d at 237). Although a "standardized and preprinted" contract is not necessarily "[an] unenforceable . . . contract of adhesion" (*Rozebooom v Northwestern Bell Tel. Co.*, 358 NW2d at 245), the Supreme Court of South Dakota has indicated that it "will declare an arbitration clause unenforceable 'when the remedies available in [that forum] are so inadequate that enforcement would be fundamentally unfair' " (*Nature's 10 Jewelers v Gunderson*, 648 NW2d 804, 811 [SD 2002, Konen-

kamp, J., dissenting], quoting *Lipcon v Underwriters at Lloyd's, London*, 148 F3d 1285, 1297 [1998], *cert denied* 525 US 1093 [1999]).

In this regard, the Supreme Court of South Dakota has repeatedly recognized that "[o]ne-sided agreements whereby one party is left without a remedy for another party's breach are oppressive and should be declared unconscionable" (*Durham v Ciba-Geigy Corp.*, 315 NW2d 696, 700 [SD 1982], citing *United States Leasing Corp. v Franklin Plaza Apts.*, 65 Misc 2d 1082 [1971]; *see Mobile Elec. Serv., Inc. v FirsTel, Inc.*, 649 NW2d at 606). This sentiment is rooted in the Constitution of South Dakota which provides that "every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay" (SD Const, art VI, § 20; *see Rozebooom v Northwestern Bell Tel. Co.*, 358 NW2d at 245).

Bearing these principles in mind, we conclude that under the circumstances present here, there is a substantial question as to whether the arbitration change-in-terms are procedurally and substantively unconscionable under South Dakota law (*see Mobile Elec. Serv., Inc. v FirsTel, Inc.*, 649 NW2d at 606; *Durham v Ciba-Geigy Corp.*, 315 NW2d at 700; *Rozebooom v Northwestern Bell Tel. Co.*, 358 NW2d at 245; *see also Braun v E.I. du Pont De Nemours & Co.*, 2006 WL 290552, *8, 2006 US Dist LEXIS 37431, *25 [2006]; *accord Allied-Bruce Terminix Cos. v Dobson*, 513 US 265, 281 [1995] [noting that the power to invalidate arbitration agreements under general principles of contract law "gives States a method for protecting consumers against unfair pressure to agree to a contract with an unwanted arbitration provision"]).

Since there is a substantial question as to whether the arbitration agreement is enforceable under South Dakota law, the Supreme Court erred in granting the respondents' motion, inter alia, to compel arbitration, and it should have granted that branch of the plaintiff's cross motion which was, in effect, to temporarily stay arbitration pending a framed-issue hearing (*see* CPLR 7503 [a]; *Matter of Schreiber v K-Sea Transp. Corp.*, 9 NY3d at 340; *Matter of Cassone*, 63 NY2d at 758; *Matter of Eagle Ins. Co. v Lucia*, 33 AD3d at 555; *Manos v Interbank of N.Y.*, 202 AD2d at 403; *O'Brien v Bache Halsey Stuart Shields*, 80 AD2d at 846; *Rose v Merrill Lynch, Pierce, Fenner & Smith*, 57 AD2d at 553; *accord Matter of State of New York v Avco Fin. Serv. of N.Y.*, 50 NY2d 383, 389-390 [1980]; *Gendot Assoc., Inc. v*

*Kaufold*, 56 AD3d 421, 424 [2008]; *Master Lease Corp. v Manhattan Limousine*, 177 AD2d 85, 87 [1992]; *Davidovits v De Jesus Realty Corp.*, 100 AD2d 924, 925 [1984]; *State of New York v Wolowitz*, 96 AD2d 47, 69 [1983]).

At the hearing, if the respondents adequately demonstrate that the plaintiff agreed to both the choice-of-law provision and the arbitration change-in-terms, the burden of proving that the arbitration change-in-terms are unconscionable is on the plaintiff (*see Matter of Schreiber v K-Sea Transp. Corp.*, 9 NY3d at 340; *see also Green Tree Financial Corp.-Ala. v Randolph*, 531 US 79, 91-92 [2000]). The parties' evidence should address factors relevant to unconscionability under South Dakota law, including the extent to which the plaintiff had a meaningful choice to reject the arbitration change-in-terms and the availability of similar credit devices that are free of terms that serve to prohibit class actions (*see generally Hayes v County Bank*, 26 AD3d 465, 466-467 [2006]; *State of New York v Wolowitz*, 96 AD2d 47, 70 [1983]). The parties should also address the costs of prosecuting the plaintiff's claim on an individual basis, including anticipated fees for experts and attorneys, the availability of attorneys willing to undertake such a claim, and the corresponding costs likely incurred if the matter proceeded on a class-wide basis (*see generally In re American Express Merchants' Litig.*, 554 F3d 300, 304 [2009]; *Scott v Cingular Wireless*, 160 Wash 2d 843, 857, 161 P3d 1000, 1008 [2007]).

The parties' remaining contentions either have been rendered academic or are without merit.

Accordingly, the order is modified, on the law, (1) by deleting the provision thereof granting the motion of the defendants Citicorp Insurance Services, Inc. and Citibank to compel arbitration and stay the action pending arbitration, and substituting therefor a provision denying the motion, and (2) by deleting the provision thereof denying that branch of the plaintiff's cross motion which was, in effect, to temporarily stay arbitration pending a framed-issue hearing, and substituting therefor a provision granting that branch of the cross motion; as so modified, the order is affirmed, and the matter is remitted to the Supreme Court, Queens County, for a framed-issue hearing in accordance herewith.

SKELOS, J.P., CHAMBERS and LOTT, JJ., concur.

Ordered that the order is modified, on the law, (1) by deleting the provision thereof granting the motion of the defendants Citicorp Insurance Services, Inc. and Citibank (South Dakota)

N.A., to compel arbitration and stay the action pending arbitration and substituting therefor a provision denying the motion, and (2) by deleting the provision thereof denying that branch of the plaintiff's cross motion which was, in effect, to temporarily stay arbitration pending a framed-issue hearing, and substituting therefor a provision granting that branch of the cross motion; as so modified, the order is affirmed, with costs to the plaintiff, and the matter is remitted to the Supreme Court, Queens County, for a framed-issue hearing in accordance herewith.