Taylor v Harlem Ctr. for Nursing & Rehabilitation, LLC (2025 NY Slip Op 50536(U))

[*1]

Taylor v Harlem Ctr. for Nursing & Rehabilitation, LLC

2025 NY Slip Op 50536(U)

Decided on April 11, 2025

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 11, 2025
Supreme Court, Kings County

Fred Taylor, Plaintiff,

against
Harlem Center for Nursing and Rehabilitation, LLC, Defendants.

Index No. 513425/2022

Krentsel Guzman Herbert, New York City (Miya Saint-Louis of counsel) for Plaintiff. 
Barker Patterson Nichols, Valhalla, New York (Kelly Bronner of counsel) for Defendant.

Aaron D. Maslow, J.

The following numbered papers were used on this motion: NYSCEF Document Numbers 25-44.
Upon the foregoing papers, having heard oral argument, and due deliberation having been had [FN1]
, the within matter is determined as follows.
Issue
Whether the arbitration agreement and jury trial waiver signed by Plaintiff, Fred Taylor ("Plaintiff"), upon admission to Harlem Center for Nursing and Rehabilitation LLC ("Defendant" or "Harlem Center") nursing facility are enforceable, or whether they are unconscionable and therefore invalid, and whether the forum selection clause requiring litigation in Nassau County should be upheld.
Introduction
Plaintiff alleged in his complaint that during his admission to Defendant's residential [*2]health and nursing care facility from about February 2, 2021 through about March 31, 2021, he was infected with SARS-CoV-2 and COVID-19 as a result of the negligence and gross negligence of Defendant. He sues for personal injuries and punitive damages.
Presently before the Court is a motion by Defendant seeking an order: (1) pursuant to CPLR 7501, 7503 (a), and 9 USC § 3, directing arbitration of the subject matter of the lawsuit and dismissing the action against Defendant in favor of arbitration pursuant to the agreement executed by and among the parties; (2) enforcing the agreement to waive a jury trial; (3) in the alternative, pursuant to CPLR 501, transferring venue to the Supreme Court of Nassau County based upon the terms of the admission agreement and thereafter, directing the Clerk of the Supreme Court of Kings County to transfer all minutes to the Supreme Court of Nassau County; and (d) pursuant to CPLR 3012 (d), if the case is not stayed or dismissed, requesting sixty days from service of the notice of entry of the Court's order on this instant motion to respond to the complaint.
Background
Plaintiff executed an Admission Agreement ("admission agreement") and a separate Arbitration Agreement ("arbitration agreement") when entering Harlem Center for Nursing and Rehabilitation, Defendant herein. These documents were signed in the presence of Jacqueline Staten ("Ms. Staten"), an employee and social worker at Harlem Center. The arbitration agreement broadly covered all claims related to the resident's stay at the facility, including contractual, tort, statutory, and common law claims. It was also binding upon successors in interest, including spouses, children, guardians, executors, and heirs of the resident. The admission agreement included a venue selection clause mandating that any disputes be litigated exclusively in Nassau County, and that Plaintiff waived the right to a jury trial. Despite the arbitration agreement, Plaintiff initiated a lawsuit in Supreme Court, Kings County on May 9, 2022. Defendant timely responded, filing the instant motion to dismiss the lawsuit and enforce the arbitration clause; alternatively to transfer venue of the lawsuit to Nassau County.
Defendant's Position
Defendant Harlem Center argues that the arbitration agreement was signed voluntarily with the terms clearly stated in plain language. The arbitration agreement also provided an opportunity for revocation within thirty days, which Plaintiff did not exercise. Defendant argues that the arbitration should be enforced as the Federal Arbitration Act (FAA) and public policy favor arbitration. Defendant relies on the following case law. The United States Supreme Court has found that nursing home arbitration agreements are enforceable (see Marmet Health Care Ctr. Inc. v Brown, 565 US 530, 530 [2012]). And as stated in Defendant's affirmation in support (NYSCEF Doc No. 26), "[T]he announced policy of [New York] favors and encourages arbitration as a means of conserving the time and resources of the courts and the contracting parties" (Nationwide Gen. Ins. Co. v Investors Ins. Co. of America, 37 NY2d 91, 95 [1975]). "[O]nce it appears that there is or is not a reasonable relationship between the subject matter of the dispute and the general subject matter of the underlying contract, the court's inquiry is ended" (id. at 96). Defendant urges that courts enforce broad arbitration clauses like the one Plaintiff signed. Where the parties to a contract have agreed to submit all disputes arising out of the contract or any dispute relating to the interpretation of the underlying arbitration agreement, [*3]it has been termed by the courts as a "broad arbitration clause" and all matters, even collateral ones, are subject to arbitration. "A broad arbitration clause should be given the full effect of its wording in order to implement the intention of the parties" (Weinrott v Carp, 32 NY2d 190, 199 [1973]). Defendant also argues that Plaintiff's agreement was voluntary, because Plaintiff had full notice of the arbitration agreement and had an opportunity to revoke the arbitration agreement within thirty days, which, as stated above, Plaintiff did not exercise.
In the alternative, Defendant asserts that if arbitration is not compelled, venue should be transferred to Nassau County. Venue selection clauses contained in nursing home admission agreements are prima facie valid and are routinely enforceable. In fact, the forum selection clause shall be enforced absent a showing that the forum selection clause contained in the admission agreement is "unreasonable, unjust, in contravention of public policy, invalid due to fraud or overreaching, or . . . that a trial in the selected forum would be so gravely difficult that the challenging party would, for all practical purposes, be deprived of its day in court" (Puleo v Shore View Ctr. for Rehabilitation & Health Care, 132 AD3d 651, 652 [2d Dept 2015]). A demand to change venue is not a prerequisite to a motion brought pursuant to CPLR 501 to enforce a venue selection clause in an admission agreement between a nursing home and a patient (Medina v Gold Crest Care Ctr., Inc., 117 AD3d 633 [1st Dept 2014]). The case law is consistent with the CPLR in that the only exception to the otherwise enforceability of a venue selection clause, that being, a place of trial, is where "there is reason to believe that an impartial trial cannot be had in the proper county" (CPLR 510 [2]). If neither arbitration nor venue transfer is granted, Defendant requests sixty additional days to respond to Plaintiff's complaint pursuant to CPLR 3012 (d).
Lastly, Defendant asserts in its affirmation in support that it reserves the right to later invoke immunity defenses not explicitly mentioned in their moving papers under New York's Emergency or Disaster Treatment Protection Act (EDTPA) and PREP Act, should the matter remain in state court.[FN2]

Plaintiff's Position
It is Plaintiff's position that the arbitration agreement is unconscionable. Under both the Federal Arbitration Act (FAA) and the New York statute, a party may resist enforcement of an agreement to arbitrate on any basis that could provide a defense to or grounds for revocation of any contract, including fraud, unconscionability, duress, overreaching conduct, violation of [*4]public policy, or lack of contractual capacity (see Matter of Teleserve Sys., Inc. (MCI Telecom. Corp.), 230 AD2d 585 [4th 1997]). Plaintiff asserts that the arbitration clause is unfairly one-sided, giving the nursing facility an unreasonable advantage by forcing all disputes into arbitration. Plaintiff asserts that the arbitration agreement is both procedurally and substantively unconscionable: it is procedurally unconscionable because the agreement was signed under conditions where Plaintiff had no meaningful choice, and it is substantively unconscionable because the agreement benefits the facility excessively at the expense of Plaintiff's legal rights. Thus, Plaintiff argues that the arbitration provision at issue herein should be declared unenforceable.[FN3]

Regarding Defendant's submitted affidavit from Ms. Staten, a facility employee who claims that she gave the arbitration agreement to Plaintiff, she was present when Plaintiff signed the arbitration agreement, and she answered any of Plaintiff's questions, Plaintiff asserts that he should be allowed to depose this facility representative before arbitration is considered. To support this argument, Plaintiff asserts that no proof exists that Plaintiff understood the agreement; that the signing process allegedly took place in just three minutes, from 1:48 PM to 1:51 PM, making it unlikely that the agreement was adequately explained; and that there is no mention of Plaintiff's mental, emotional, or physical state at the time of signing. Accordingly, Plaintiff argues that he should be allowed to depose Ms. Staten to investigate the circumstances surrounding the agreement.[FN4]

Regarding the digital signature's authenticity, Plaintiff disputes the electronic signature on the arbitration agreement. Pursuant to State Technology Law § 304(2), electronic signatures are just as valid as handwritten signatures when authentic; they are also easily forged and misused. Plaintiff asserts that Defendant did not provide metadata or verification of Plaintiff's signature, leaving the signature's authenticity in question.[FN5]

Lastly, Plaintiff asserts that the forum selection clause is unreasonable and unjust. Although Defendant seeks to move this case from Kings County to Nassau County based on a forum selection clause in the admission agreement, Plaintiff asserts that forum selection clauses are valid unless they are unreasonable, unjust, or against public policy, and that the clause in this case serves no legitimate purpose other than to benefit Defendant. For example, neither party has any connection to Nassau County, Plaintiff was treated in New York County, and forcing Plaintiff to litigate in Nassau County would impose a significant hardship. Moreover, Plaintiff asserts that the clause was buried in a lengthy admission agreement, making it unlikely that Plaintiff was fully aware of its implications. Accordingly, Plaintiff contends that enforcing this forum selection clause would be unfair and against public policy.[FN6]

Discussion
"A party seeking to compel arbitration must establish 'the existence of a valid agreement to arbitrate' " (Wolf v Hollis Operating Co., LLC, 211 AD3d 769, 770 [2d Dept 2022]). Moreover, "In order to compel a party to arbitrate pursuant to a contractual agreement there must be 'no substantial question [as to] whether a valid agreement was made or complied with' " (Matter of Frankel v Citicorp Ins. Servs., Inc., 80 AD3d 280, 284 [2d Dept 2010]). "In the event such question is raised, it is for the court to adjudicate" (id.). "The doctrine of unconscionability contains both substantive and procedural aspects, and whether a contract or clause is unconscionable is to be decided by the court against the background of the contract's commercial setting, purpose and effect" (Sablosky v Gordon Co., 73 NY2d 133, 138 [1989]). "Substantively, courts consider whether one or more key terms are unreasonably favorable to one party. There is no general test for measuring the reasonableness of a transaction but we have recently provided [*5]this guidance: "[a]n unconscionable contract [is] one which 'is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms' " (id.). In Sablosky, the New York State Court of Appeals did not "accept plaintiff's claim that the contract [was] one of adhesion or that it result[ed] from procedural unconscionability in the contract formation process. Such claims are judged by whether the party seeking to enforce the contract has used high pressure tactics or deceptive language in the contract and whether there is inequality of bargaining power between the parties" (id. at 139). Furthermore, "The "valid agreement" referred to in CPLR 7503 concerns a valid agreement to arbitrate. Thus, even when it is alleged . . . that the contract itself is invalid in its entirety, the court's role is still confined to determining the validity of the arbitration clause alone" (Matter of Prinze [Jonas], 38 NY2d 570, 577 [2d Dept 1976]).
Unconscionability
In Wolf, " . . . following a heart attack and a hospital stay, the plaintiff's decedent was admitted to a skilled nursing facility . . . owned and operated by the defendants. Upon admission, the nursing home's staff noted that the decedent suffered from delirium superimposed on dementia, among other diagnoses. The plaintiff, who is the decedent's son, went to the nursing home after the decedent had been admitted. When the plaintiff arrived, the nursing home's administrator allegedly provided him with signature pages from the facility's standard admission agreement, but not the full agreement, and asked him to sign them. The plaintiff complied, and only thereafter received a blank copy of the full admission agreement from the administrator, including unsigned versions of the pages he had just signed. The admission agreement contained an arbitration provision featuring its own signature page, and this page was among those the plaintiff had executed. On February 9, 2019, the decedent allegedly was pushed by another resident, causing him to fall and sustain injuries. The decedent died on February 15, 2019" (Wolf, 211 AD3d at 770). The Second Department ruled that the burden of establishing the existence of a valid agreement to arbitrate was not met because the defendants "did not submit sufficient evidence of the plaintiff's authority to bind the decedent to arbitration at the time he signed the admission agreement on the decedent's behalf" (id.). "Most significantly, the defendants failed to submit the instrument through which the plaintiff allegedly derived his authority to bind the decedent to arbitration" (id. at 770-771).
In Hayes v County Bank, "[t]he plaintiff contend[ed] that the arbitration agreement[] [was] procedurally and substantively unconscionable and therefore unenforceable" (Hayes v County Bank, 26 AD3d 465, 466 [2d Dept 2006]). "However, the evidence in the record [did] not establish procedural unconscionability with regard to the arbitration agreements within the loan documents signed by this plaintiff. The plaintiff set forth no evidence regarding her education, financial status, access to legal counsel, or the availability of other banks or lending institutions" (id. at 466-467). Similarly here, there is no evidence from Plaintiff regarding Plaintiff's state of mind when he was signing the arbitration agreement, information about Ms. Staten, or any other crucial information that would strengthen Plaintiff's claim. "Furthermore, the fact that the arbitration agreement[ ] effectively preclud[ed] [the plaintiff] from pursuing a class action [did] not alone render them substantively unconscionable" (id. at 467). Here, it could also be said that the simple fact that the arbitration agreement effectively precluded Plaintiff from pursuing a course of action other than arbitration does not alone render the arbitration [*6]agreement and the arbitration clause substantively unconscionable.
Here, the arbitration agreement, labeled "Voluntary Arbitration Agreement" in bold (NYSCEF Doc No. 28), specifically states the following in bolded and capitalized letters: "THIS AGREEMENT GOVERNS IMPORTANT LEGAL RIGHTS. PLEASE READ IT CAREFULLY BEFORE SIGNING." Afterwards, the first sentence after this bolded and capitalized text is the following bolded paragraph containing the following sentence: "This is a voluntary Agreement to arbitrate any Dispute that may arise in the future between the Parties arising from, relating to or pertaining to the provision of services under the Admission contract." The arbitration agreement, in the next sentence, then defines what arbitration is, and states the following: "In arbitration, a neutral third party chosen by the Parties issues a final, binding decision. When Parties agree to arbitrate, they waive their right to a trial by jury and the possibility of an appeal." And directly underneath this sentence, the following bolded sentence is written: "Neither the Resident nor the Resident's Representative is required to sign this Agreement as a condition of admission to, or as a requirement to continue to receive care at, the Facility. "Although no particular wording is required to constitute a valid, binding arbitration agreement, nor even the inclusion of the words "arbitrate" or "arbitrator," the language used must be clear and unambiguous" (Lovisa Constr. Co. v County of Suffolk, 108 AD2d 791, 792 [2d Dept 1985]).
Here, the language was conspicuous, bolded, and capitalized, far from any deceptive practices. Moreover, a sworn affirmation from Ms. Staten, employed by Defendant as an Admission Coordinator from October 2019 through March 4, 2021, the day Plaintiff executed the admission agreement, provides that Plaintiff voluntarily signed both the admission agreement and the arbitration agreement in March 2021 after the terms were fully explained to him; that Defendant followed its standard admissions process, which included assessing whether the resident could understand and sign documents, which Plaintiff was deemed capable of doing; that Ms. Staten explained the Arbitration Agreement to Plaintiff, including that signing it meant that Plaintiff waived his right to a jury trial and agreed to arbitration; that Plaintiff was allegedly given the option to review the agreements further or to refuse to sign the agreement, but Plaintiff chose to proceed; and that the signed documents were maintained as business records by Defendant, and Ms. Staten personally witnessed Plaintiff's signatures. Accordingly, the arbitration provision should be enforced. This was not rebutted by Plaintiff.
The Court relies on the decision in Knight v New York & Presbyt. Hosp. (42 NY3d 699 [2024]), which held that once a defendant health care facility comes forward with sufficient evidence of authenticity of a patient-facility agreement, the burden shifts to the plaintiff to show why the provisions should not be enforced. Here, Defendant made out its prima showing that Plaintiff's electronic signature on the arbitration agreement was authentic and, without anything probative from Plaintiff to rebut it, the agreement must be upheld. The arbitration agreement was not unconscionable and must be enforced.
Choice of Law Clause
The Second Department has noted that "New York courts will generally enforce a clear and unambiguous choice-of-law clause contained in an agreement so as to give effect to the parties' intent" (Matter of Frankel, 80 AD3d at 285). "[M]atters of substantive law fall within the course charted by choice of law analysis" (id.). Accordingly, "New York courts therefore apply [*7]contractual choice of law clauses only to substantive issues" (id. at 286). "Significantly, "the law of the forum normally determines for itself whether a given question is one of substance or procedure" (id.).
Here, the transfer of venue from Kings County to Nassau County will not be necessary since the arbitration agreement is going to be enforced. However, this Court would like to briefly touch upon the forum selection clause at issue herein. The admission agreement at issue herein contains a section titled "XIII. Jurisdiction, Venue, Waiver of Jury Trial" in underlined and bolded text which contains the following statement: "This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of New York. For purposes of this Agreement, including but not limited to questions concerning its interpretation, performance, breach or enforceability, the parties hereto submit to the exclusive jurisdiction of the courts of the State of New York and the parties further designate Nassau County as the exclusive venue for any proceeding or action brought in the courts of the State of New York."
Accordingly, the admission agreement includes a venue selection clause mandating that any disputes are to be litigated exclusively in Nassau County. Although, as Plaintiff asserts, it could very well be true that neither party has any connection to Nassau County, especially since Plaintiff was treated in New York County, this clause is still explicitly contained in the admission agreement which Plaintiff signed on March 4, 2021. Moreover, contrary to Plaintiff's assertion that the clause was buried in a lengthy admission agreement, the clause is written on the page directly above the signature page with its own bolded and underlined subheading including the words "Jurisdiction" and "Venue." Consequently, since forum selection clauses are valid unless they are unreasonable, unjust, or against public policy, and since the forum selection clause here is explicitly written, conspicuous, and is not unreasonable, unjust, or against public policy, the forum selection clause in this admission agreement is valid.
Conclusion
Accordingly, IT IS HEREBY ORDERED that Defendant Harlem Center for Nursing and Rehabilitation, LLC's motion seeking various forms of relief is GRANTED TO THE EXTENT that Plaintiff Fred Taylor shall arbitrate his claims against said Defendant in accordance with the Arbitration Agreement dated March 4, 2021; and it is further
ORDERED that all proceedings in this action are hereby STAYED, except for an application to vacate or modify said stay; and it is further
ORDERED that either party may make an application by order to show cause to vacate or modify this stay upon the final determination of the arbitration.

Footnotes

Footnote 1:Counsel are reminded of the provisions requiring that an opinion or decision be included in the record on appeal should one be taken (see CPLR 5526; 22 NYCRR 1250.7 [b] [4], [d] [1] [iii]). Transcripts may be procured from the court reporter (see Matter of Lewandowski v Office of Ct. Admin., 173 Misc 2d 335 [Sup Ct, Albany County 1997]).

Footnote 2:. Defendant asserts the following in its affirmation in support (see NYSCEF Doc No. 26, ¶47): The emerging case law is repeatedly dismissing complaints concerning medical care provided during the time the EDTPA COVID-19 immunity was in effect, when the care was impacted by acts and decisions to treat, prevent or combat COVID-19. Just recently, the Appellate Division, Third Department reversed the trial court and granted defendant's pre-answer motion to dismiss the complaint under New York's Emergency or Disaster Treatment Protection Act ("EDTPA") (see Whitehead v Pine Haven Operating LLC, 222 AD3d 104 [3d Dept 2023]). Similarly, the Appellate Divisions, First and Second Departments reversed the trial court and granted defendant's pre-answer motion to dismiss the complaint under the EDTPA (see Mera v New York City Health & Hosps. Corp. [2d Dept 2023]); see also Martinez v NYC Health & Hosps. Corp., 223 AD3d 731 [2d Dept 2024]) (trial court erred in failing to dismiss a complaint under EDTPA where COVID-19 was at the nexus of the allegations). The emerging case law also repeatedly dismisses claims of "gross negligence," including in the recent decision by the Appellate Division, Third Department in Whitehead.

Footnote 3:In Defendant's affirmation in reply (NYSCEF Doc No. 42), Defendant counters Plaintiff's argument that the arbitration agreement is unconscionable by asserting the following: the arbitration agreement was presented as a separate document from the admission agreement; the arbitration agreement contained conspicuous language explaining that arbitration was not mandatory for admission; and Ms. Staten, the Admissions Coordinator, stated in an affidavit that she reviewed the agreement with Plaintiff, informed Plaintiff that signing the agreement was optional, and personally witnessed Plaintiff sign the agreement. Accordingly, it is Defendant's position that the arbitration agreement was mutually binding.

Footnote 4:In Defendant's affirmation in reply (NYSCEF Doc No. 42), Defendant counters this point as well, stating that deposing Ms. Staten would be unnecessary. Specifically, Defendant argues that Ms. Staten's affidavit already provides a full account of the signing process; that there is no proof that another individual has relevant information; and that Plaintiff's claim that the agreement was signed too quickly is irrelevant because Ms. Staten never stated that she rushed the signing process. 

Footnote 5:Defendant also counters this in its affirmation in reply (NYSCEF Doc No. 42), stating that Plaintiff's assertion regarding the digital signature is baseless. In its support, Defendant asserts that Ms. Staten was present when Plaintiff signed the arbitration agreement; that no evidence suggests forgery or the improper handling of the electronic signature; and that Plaintiff did not submit an affirmation contradicting Ms. Staten's sworn statement.

Footnote 6:In reply (NYSCEF Doc No. 42), Defendant asserts that the venue selection clause is enforceable because it was clearly stated in the admission agreement; the heading was bolded and underlined, making it conspicuous; and the agreement also included a jury trial waiver in capital letters. The forum selection clause shall be enforced absent a showing by plaintiff that the forum selection clause contained in the admission agreement is unreasonable, unjust, in contravention of public policy, invalid due to fraud or overreaching, or that a trial in the selected forum would be so gravely difficult that the challenging party would, for all practical purposes, be deprived of its day in court (Puleo v Shore View Ctr. for Rehabilitation & Health Care, 132 AD3d 651, 652 [2d Dept 2015]). It is assumed that the party signing the nursing home admission agreement read and understood the terms when signing (Medina v Gold Crest Care Ctr., Inc., 117 AD3d 633, 634 [1st Dept 2014]).
Moreover, Defendant counters Plaintiff's argument by stating that Plaintiff signed the admission agreement weeks after being admitted; that there is no evidence that Plaintiff was forced to sign the agreement or was unaware of the agreement's terms; and that the law assumes that signing a contract means understanding its terms (Medina, 117 AD3d at 634). Accordingly, Defendant argues that Plaintiff has only made bare, conclusory allegations about the forum selection clause without any real proof.